CALVIN SEAVEY *vs.* MELVIN PREBLE.

*Care—when highest degree of demanded.    Justification.*

The law requires the use of all possible care to prevent the spread of small-pox or other contagious disease; and while the medical profession is divided as to the necessity of using any .particular precautionary measures a physician or other person having the care of small-pox patients will be justified in adopting it; and within the operation of this rule paper may be removed from the walls of rooms in which small-pox patients have been sick, if in the opinion of the attending physician it has become so soiled and .besmeared with small-pox virus as to make its removal necessary; and an action of trespass will not lie by the owner of the building against the physician for advising or directing such removal.

ON MOTION FOR A NEW TRIAL, because the verdict for the plaintiff for $35 was against law and evidence.   There were exceptions filed to the ruling that the action (trespass *quare clausum*) could be maintained although the *locus in quo* was in the occupation of a tenant at will by whose license the defendant entered; but as the court declares the law well settled on this point no further statement of it is necessary.   The facts all appear by the opinion.

*T. W. Vose* for the defendant.

*Lewis Barker* for the plaintiff.

WALTON, J.   We perceive no objection to the form of the action in this case.   It is well settled that trespass *quare clausum*

*fregit*, may be maintained by the owner of real estate for an injury to the freehold, notwithstanding it was in the possession of a tenant at will at the time of the alleged injury. *Davis* v. *Nash*, 32 Maine, 411.

But we think the verdict is clearly against evidence.

When the small-pox or any other contagious disease exists in any town or city the law demands the utmost vigilance to prevent its spread. "All possible care" are the words of the statute. R. S., c. 14, § 30.

To accomplish this object persons may be seized and restrained of their liberty or ordered to leave the state; private houses may be converted into hospitals and made subject to hospital regulations; buildings may be broken open and infected articles seized and destroyed, and many other things done which under ordinary circumstances would be considered a gross outrage upon the rights of persons and property. This is allowed upon the same principle that houses are allowed to be torn down to stop a conflagration. *Salus populi suprema lex*—the safety of the people is the supreme law—is the governing principle in such cases.

Where the public health and human life are concerned the law requires the highest degree of care. It will not allow of experiments to see if a less degree of care will not answer. The keeper of a furious dog or a mad bull is not allowed to let them go at large to see whether they will bite or gore the neighbor's children. Nor is the dealer in nitro-glycerine allowed in the presence of his customers to see how hard a kick a can of it will bear without exploding. Nor is the dealer in gunpowder allowed to see how near his magazine may be located to a blacksmith's forge without being blown up. Nor is one using a steam engine to see how much steam he can possibly put on without bursting the boiler. No more are those in charge of small-pox patients allowed to experiment to see how little cleansing will answer; how much paper spit upon and bedaubed with small-pox virus, it will do to leave upon the walls of the rooms where the patients have been confined. The law will not tolerate such experiments. It demands the exercise of all pos-

sible care.   In all cases of doubt the safest course should be pursued remembering that it is infinitely better to do too much than run the risk of doing too little.

Unfortunately medical science has not yet arrived at that degree of perfection which will enable its practitioners to agree.   There is scarcely a case tried where medical testimony is used, in which the doctors do not disagree.   The swearing is sometimes so bitterly antagonistic as to make it painful to listen to it.

There is the usual conflict of medical testimony in this case. The defendant and other physicians called by him as witnesses express the opinion that it is necessary in order to cleanse a room in which small-pox patients have been confined to remove the paper from the walls.   The plaintiff, (himself a physician) and the other physicians called by him as witnesses express the opinion that it is not necessary.   Several of them however admit that if the paper is loose or the small-pox virus has actually come in contact with it, it should be removed.

Mrs. Liscomb the nurse employed by the city to take care of this family testifies that the paper needed to be taken off; that it was dirty around where the diseased folks were; that it was all dirty ; that the spittle from the mouths of the patients flew upon it.   Doctor Blaisdell who attended the family some two or three weeks before it came under the care of the defendant testifies that he noticed the paper particularly about the bed and that it was a good deal soiled ; that he supposed the patient must have spit a good deal and was not particular where he spit ; that in such cases it is difficult to expectorate ; that the more violent the disease the more adhesive the saliva ; that there is usually a great deal of saliva in all cases ; that in this case the patient lay against the wall some of the time and that when the patient is against the wall and soils the paper by saliva and by putting his hands upon it the best medical advice is to remove it and whitewash the wall with quicklime ; that in this case he should have stripped off all the paper. Other physicians called by the defendant express substantially the same opinion.

Union Ins. Co. *v.* Greenleaf.

Under these circumstances what was it the duty of the defendant to do ? The small-pox seems to have been unusually prevalent. The defendant testifies that he had a hundred and seven cases during the winter. He was city physician. Upon his efforts in a large degree depended the safety of the city. He could not go to his medical brethren for direction for they as usual were divided in opinion. The mandate of the law to him was "use all possible care." Under these circumstances we think he was justified in advising the removal of the paper from the walls of the rooms in which the small-pox patients had been confined, and that the law protected him in so doing. *Motion sustained.*

APPLETON, C. J., CUTTING, BARROWS, DANFORTH and PETERS, JJ., concurred.