(11 App. Div. 10.)

SMITH v. EMERY.

(Supreme Court, Appellate Division, Second Department. December 15, 1896.)

EVIDENCE—EXPERTS—NATURE OF DISEASE.
  In an action against the commissioner of health for false imprisonment, in quarantining plaintiff because of his alleged exposure to smallpox, defendant may introduce expert testimony to show the infectious or contagious character of the disease, how the contagion is conveyed, and how long it retains its vitality.

Appeal from trial term, Kings county.

Action by William H. Smith against Z. Taylor Emery for false imprisonment. From a judgment entered on a verdict in favor of plaintiff, and from an order denying a motion for a new trial, defendant appeals. Reversed.

Argued before CULLEN, BARTLETT, HATCH, and BRADLEY, JJ.

Frederic A. Ward, for appellant.
Horace Graves, for respondent.

BRADLEY, J. The action is for alleged false imprisonment. The alleged defense is that, in what the defendant did in the premises, he was acting as commissioner of health of the city of Brooklyn, pursuant to authority conferred by statute, which provides that:

"In the presence of great and imminent peril to public health of the city of Brooklyn by reason of impending pestilence, it shall be the duty of the said commissioner to take such measures and do and order and cause to be done such acts, and make expenditures * * * for the preservation of the public health from such impending pestilence as he may, in good faith, declare the public safety and health to demand, and the mayor of said city, and the president of the Medical Society of Kings County, shall also in writing approve." Laws 1888, c. 583, tit. 12, § 5.

The general statute relating to "local board of health" also provides that:

"Every such local board of health shall guard against the introduction of contagious and infectious diseases by the exercise of proper and vigilant medical inspection and control of all persons and things arriving in the municipality from infected places or which from any cause are liable to communicate contagion. It shall require the isolation of all persons and things infected with or exposed to such diseases." Laws 1893, c. 661, § 24.

In April, 1894, there were a large number of cases of smallpox in the city of Brooklyn. The most thickly-infected portion of the city was in what was known as the "Eastern District," in which district was the plaintiff's place of business, in the radius of three miles from which, the evidence tends to prove, there were upward of 50 cases of the disease in the latter part of April and first of May, 1894. The plaintiff was engaged in the express and trucking and carting business, having 10 or more drivers and several boys, who were engaged in receiving, transporting, and delivering various things, packages, articles of merchandise, etc., in and about the city, and other people frequently came to his place for business purposes. On May 2, 1894, Dr. Shelling, one of the inspectors of the health department of the city, called upon the plaintiff at his place of business, and requested permission to vaccinate him. The plaintiff refused, and thereupon was informed by the doctor that he would be given 24 hours within which to get vaccinated, and that if it was not done the plaintiff would be quarantined. The next day, about 3 o'clock in the afternoon, the doctor called again, and was informed by the plaintiff that he had not been and would not be vaccinated. Shortly after a police officer appeared, and told the plaintiff he was quarantined, and would have to stay in. The plaintiff remained there until 4 o'clock on the afternoon of the next day, when by virtue of a writ of habeas corpus in his behalf he came into court and was paroled. The hearing had upon return to the writ resulted in his discharge. The question is whether there was any evidence offered or received to permit the conclusion that such detention of the plaintiff was justified.

On March 20, 1894, the defendant, as commissioner of health, promulgated rules for vaccination, to the effect that all persons who had not been successfully vaccinated within five years should be urged to accept vaccination, and, in case persons are found who had never been vaccinated, effort should be made to induce them to accept it. The defendant offered in evidence the proclamation of the health commissioner and of the mayor of the city and the president of the Medical Society of Kings County, of date May 4, 1894, which were, respectively, excluded. By the former the health commissioner, after reciting that smallpox had been an epidemic in the city for three months, and that there was imminent peril to the public health of the city by reason of the pestilence, and from the further spread of it, declared that the following were necessary for the preservation of the public health from such impending pestilence, and that such measures should be taken:

"First. Thorough and sufficient vaccination of every citizen who has not been successfully vaccinated within such period of time as, in the judgment of the commissioner of health, renders such person immune, should be procured. Second. Wherever any person in said city shall refuse to be so vaccinated, such person

should be immediately quarantined, and detained in quarantine until he consents to such vaccination."

Annexed to this (which was made part of theirs) was the proclamation of the mayor and president of such medical society, to the effect that they approved of the taking and doing of the measures and acts above declared necessary by the commissioner of health, and they declared that the peril from impending epidemic of smallpox should be deemed to exist from January 1, 1894, to and including the 1st day of July following, and proclaimed the same to have existed and to so exist for that period.

It has been seen that the power given by statute to isolate a person is dependent upon his infectious or contagious disease; and if the plaintiff had within a short time been, or then was, exposed to smallpox, within the meaning of that provision of the statute, his detention was justified. This was held in the habeas corpus case before referred to. In re Smith, 146 N. Y. 68, 40 N. E. 497. In the opinion of the court, there delivered by Judge Gray, it was said that the mere possibility that persons might have been exposed to such disease is not sufficient, but they must "have been exposed to it, and that the conditions actually exist for a communication of the contagion, in order to bring into operation the power to isolate. The meaning of the particular language in this section is, and it should be read, that the board of health shall require the isolation of all persons and things infected with or who have been exposed to such diseases." It may be common knowledge that one coming in personal contact with another infected with a contagious disease or occupying the same room with him is exposed to it. But, beyond that, whether, in a particular case, conditions so exist for the communication of the contagion to a person as to render him exposed to the disease may be a question of medical science and skill.

On the part of the defense evidence was given of the existence of smallpox in the city; something of the extent of the disease in what is called the "Eastern District" of the city; also, tending to prove that some of the men in the plaintiff's service had been in proximity to the place where the persons infected with the disease were, and in the presence of some of the inmates of houses where it existed. This, standing alone, may have had no essential importance. But the defendant offered to prove how many cases of the disease there were there in March, April, and May; also, to introduce a map indicating the location of the cases existing at the times in question, and to verify it by other evidence; also, offered to prove by a member of the medical profession the infectious and contagious character of smallpox, how the contagion of the disease is conveyed, that it is conveyed by the air, absorbed in the respiratory tract, conveyed in clothing and utensils, and by atmospheric contagion, and how long the poison of the disease retains its vitality. This evidence, as the offers of it were made, was excluded, and exceptions taken. We think this evidence was admissible. It was offered with the view to a hypothetical question to the witness, and such a question was propounded to him, embracing a state of facts, and calling for his opinion whether the plaintiff

was exposed to smallpox, which was also excluded; and, when taking exception, the defendant's counsel asked the court whether it was excluded on the ground that it contained any misstatement of fact. The court thereupon remarked that "it is not a question for an expert." ' The view of the learned court evidently was that, so far as the fact rested in opinion, founded upon a given state of facts, short of what might, by the aid of ordinary intelligence and understanding, be deemed exposure, it would be no more, in effect, than that the person was liable to take the disease,—a mere possibility of such a result. If no more than that, it would be ineffectual for the purpose of the defense. But can that be assumed? The conditions requisite, and those which ultimately do exist, such as to produce exposure, are not necessarily, and may not be, matters within common understanding. They present medical questions, and the effect of them in a given case is the subject of professional opinion. The reasons for the reception of opinions of experts as evidence, the occasion for it, and the purpose, have been so frequently expressed by judicial and text writers that it is unnecessary to repeat them here. Van Wycklen v. City of Brooklyn, 118 N. Y. 424, 24 N. E. 179; Young v. Johnson, 123 N. Y. 226, 25 N. E. 363.

No consideration is given to the question whether all the facts assumed by the inquiry were warranted by the evidence, or were sufficient to constitute the basis for an opinion, as evidence which otherwise may have furnished some facts for the hypothetical question was excluded, since the ruling was upon the ground that evidence of experts was not competent for the purpose for which this was offered. It cannot now be seen what the evidence would have been or the bearing which it legitimately may have had. The purpose of the defendant's counsel was to prove actual exposure of the plaintiff to the disease if he could. Notwithstanding the fact that it is not apparent to common understanding, upon those facts, that such may have been the relation of the plaintiff to it, that does not seem a sufficient reason for the conclusion that it was impossible to furnish, by means of medical opinions founded upon such facts, evidence tending to prove that he was so exposed to the disease.

While the proclamation of the mayor and president of the Kings County Medical Society may not have had the significance suggested by counsel, we are inclined to think it was admissible, for the reason, if no other, that at the time it was issued the plaintiff was in quarantine. This, however, without the fact of actual exposure of the plaintiff to the disease, could afford no legal justification to his enforced detention by the defendant.

These views lead to the conclusion that the judgment and order should be reversed, and a new trial granted, costs to abide the event.

CULLEN and HATCH, JJ., concur.

WILLARD BARTLETT, J. (concurring in result). I agree with Mr. Justice BRADLEY that the defendant should have been al-

lowed to prove how many cases of smallpox there were at or about the time the plaintiff was quarantined, the manner in which the contagion of the disease is conveyed, and how long the poison of the malady retains its vitality.    Indeed, it seems to me that it was competent for him to give evidence of any fact, whether of scientific, medical, or common knowledge, from which the jury could legitimately draw the inference that the plaintiff had been exposed to the smallpox.    I entertain considerable doubt, however, as to the propriety of permitting hypothetical questions in such a case as this, which call out opinion evidence to the effect that a given series of events constitutes such exposure; and I prefer to limit my concurrence to the grounds which I have stated.