Rockingham,
June, 1897.

## WHIDDEN *v.* CHEEVER.

A health officer who in good faith quarantines a dwelling-house occupied by persons sick with the small-pox acts within the limits of his statutory authority, and is not liable to an inmate of the house who was thereby restricted to the premises, although not infected with the disease.

CASE, for using the plaintiff's dwelling-house as a small-pox hospital, and confining him to the premises against his will during the prevalence of the disease. Facts agreed.

*Calvin Page,* for the plaintiff.

*Thomas E. O. Marvin* and *Frink & Marvin,* for the defendant.

CLARK, J. The plaintiff seeks to recover damages of the defendant, who was the physician member of the board of health of the city of Portsmouth, for using his dwelling-house and buildings for small-pox patients, and for confining him to the premises against his will and exposing him to contagion from March 24 to May 14, 1894. The house was situated on the Lafayette road in Portsmouth, about three miles from the city, and was occupied by one Wright, under a lease, the plaintiff reserving certain rooms of the house for the separate use of himself and his sister. Members of Wright's family were afflicted with the small-pox. The defendant thereupon took charge of the sick persons and the buildings, established a quarantine,

and posted notices upon the outside of the house forbidding any person to leave or enter it. The plaintiff, who was not ill, protested against his confinement to the buildings and the use made of his premises, and requested the defendant to remove the patients to a pest-house. He was confined by the defendant until the quarantine was raised, and was then released. The question is whether upon these facts this action can be maintained.

If the defendant, as a health officer, acted within the limits of his authority and in good faith, he is not liable for errors of judgment; but it is well settled that such an officer is liable for acts in excess of his authority. *Spring* v. *Hyde Park*, 137 Mass. 554; *Brown* v. *Murdock*, 140 Mass. 314. The statute defining the powers and duties of health officers during the prevalence of the small-pox and other pestilential diseases provides that " The health officers may remove any person infected with the small-pox . . . to some suitable house provided by them for that purpose, if it can be done without endangering the life of the person; and they may make such regulations respecting such house and for preventing unnecessary communication with such persons or their attendants as they may think proper." P. S., *c.* 110, *s.* 2. " If any person shall break out with the small-pox, and the health officers shall judge that he may remain without endangering others than his own family, they may give license to persons who have been exposed to the danger of taking the disease to be inoculated and to remain in the same house, subject to such regulations as they may impose." *Ib.,* *s.* 5.

Statutes enacted for the preservation of the public health are to receive a liberal construction. The powers conferred upon local boards of health are quite extensive when the public health or comfort demands it. The case does not show whether the lives of those sick with the small-pox would have been endangered by their removal to a pest-house. Upon this question the decision of the health officers, acting in good faith, would have been final; and as there is no imputation of bad faith, it may be assumed that, in the opinion of the health officers, the lives of the patients would have been endangered by their removal. The defendant did what he was authorized to do by the statute. He allowed the sick persons to remain in the house, and that was the extent of the possession exercised by him. In forbidding inmates of the house not afflicted with the small-pox to go abroad, and persons from abroad to enter, he conformed to the usual practice. *Farmington* v. *Jones*, 36 N. H. 271; *Wilkinson* v. *Albany*, 28 N. H. 9.

That part of the house where four persons lay sick with the small-pox, and one died, was held by the plaintiff's tenant un-

der a lease, and the plaintiff would have no cause of action for a disturbance of the possession unless his interest was in some way affected. The defendant's possession of the house consisted in allowing the sick persons to remain there, and in prohibiting the inmates who were not sick from leaving, and others from entering; and this he had authority to do under the statute. It does not appear that the defendant was ever in that part of the house reserved for the use of the plaintiff, or that he attempted to exercise any control over it, except to prohibit the plaintiff from going abroad and endangering the health of the community. This he was authorized to do, under the provisions of the statute and as a reasonable police regulation for the protection of the public health. There was no taking of property for public use without compensation. It was merely the exercise of a reasonable health regulation under the police power of the state, within the limitations of the statute.

Such regulations as are reasonably calculated to preserve the public health are valid, though they may abridge individual liberty and rights of property. 1 Dill. Mun. Cor., s. 326. There is nothing in the case to show that the defendant did anything he was not authorized to do, or that he did not act in good faith within the limits of his statutory duty, as he understood it. Notwithstanding the plaintiff's restriction to the premises and his exclusion from association with the community during the prevalence of the disease to which he was exposed, the defendant is not liable to him in damages. There is nothing in the case which shows that the defendant did not act in good faith and within the limits of his statutory duty.

*Case discharged.*

All concurred.