## S. C. KIRBY, Appellant, v. W. B. HARKER.

**Quarantine for contagious disease:** DAMAGES. One suspected of a contagious disease, who voluntarily secludes himself by virtue of an agreement with a member of the board of health, can not maintain an action for damages for false imprisonment because of such restraint.

**Same:** NOTICE OF CONTAGIOUS DISEASE. A local board of health has power to quarantine one afflicted with contagious disease without written notice thereof from a practicing physician; the giving of such notice is only required by the statute to authorize the mayor to act independently of the board of health.

**Same:** FALSE IMPRISONMENT: DAMAGES. When the mayor of a town, who is also president of the local board of health, simply executed the requirements of the board in establishing a quarantine, he is not personally liable for false imprisonment.

**Same:** QUARANTINE OF EXPOSED PERSONS. Where one afflicted with contagious disease is quarantined at his own home, the members of his family may also be secluded from the public with him, where the board of health orders a quarantine of all persons directly exposed.

*Appeal from Greene District Court.*—HON. F. M. POWERS, Judge.

FRIDAY, JULY 2, 1909.

SUIT to recover damages for false imprisonment. There was a directed verdict for the defendant, and, from a judgment thereon, the plaintiff appeals.—*Affirmed.*

*W. W. Turner* and *Gallaher & Graham,* for appellant.

*J. A. Henderson,* for appellee.

SHERWIN, J.—The plaintiff was quarantined for smallpox in his own home from the 1st day of June until the 3d day of July, 1901. The defendant was at that time mayor of Grand Junction, and, by virtue of said office, the president of the local board of health. This suit is to recover damages for the restraint; the plaintiff alleging in his pleading that it was illegal and malicious.

The facts are substantially as follows: A rumor reached the defendant that the plaintiff was sick, and on the 30th or 31st of May he went to see him. After the call, the defendant immediately notified the health physician of Grand Junction, Dr. G. W. Kester, of the plaintiff's condition, and the latter visited the plaintiff and examined him in the afternoon of the 31st day of May, and at once reported to the defendant that the plaintiff was afflicted with smallpox. At about the same time the defendant telephoned to Dr. C. B. Adams, who was then a member of the state board of health, residing at Sac City, notifying him of the plaintiff's condition, and asking him to come and investigate the matter. Dr. Adams went to Grand Junction on the 1st of June, made an examination of the plaintiff, had a consultation about his case with Dr. Kester, and then reported to the defendant that the plaintiff had smallpox. The reports of the two doctors to the defendant were verbal only. While Dr. Adams was making his examination of the plaintiff, he told the plaintiff that he diagnosed his case as smallpox, and, in answer to the plaintiff's inquiry as to what was to be done, sug-

gested to him that he remain in his drug store with the doors locked until evening, and then go to his home and submit to quarantine. After talking the matter over, the plaintiff agreed to follow the advice, and this conversation and agreement was reported to the defendant by Dr. Adams. Following the report of Dr. Adams, the defendant called together the local board of health, and at the session so called the entire matter was laid before the board. But in making such report it was also reported that the plaintiff had already been quarantined by the defendant, which, as we understand the present record, was not true. The board approved the quarantine so reported, and passed a resolution to the effect that the rules and regulations of the state board of health be carried out to the letter; that the chairman of the board quarantine all "directly" exposed persons, and place a guard over the quarantined persons if found necessary. After this action had been taken by the board, a notice of quarantine was served upon the plaintiff, and, after the notice, a guard was placed over his premises, and he was not permitted to leave them until the quarantine was raised on the 3d of July.

While the record of the board of health recites that the plaintiff had already been quarantined, it is shown without substantial conflict that there was no restraint of the plaintiff until after the board of health had officially directed the quarantine of all suspects, and notice thereof had been served upon the plaintiff. If he remained secluded from his neighbors before service of the notice, it was because of his agreement with Dr. Adams and was purely voluntary, and hence no liability can be predicated thereon. Bishop on Noncontracts, sections 49-53, inclusive.

1. QUARANTINE FOR CONTAGIOUS DISEASE: damages.

In the light of the record before us, we think it must be held that, when the quarantine was finally established and the plaintiff's liberty restrained, it was in pursuance

of the formal direction of the board of health, and not
upon the individual authority of the de-

2. SAME: notice of contagious disease.

fendant. And, if such be the case, the question of a written notice to the defendant is
wholly immaterial. Code, section 2568, provides that the
mayor and council of each city and town shall constitute
a local board of health within the limits of such cities and
towns, and that such board shall have power "to proclaim
and establish quarantine against all infectious or contagious diseases dangerous to the public, and maintain and
remove the same, as may be required by regulations of
the state board." The last clause of the section also provides that the quarantine authorized by the preceding provisions of the section may be declared or terminated by
the mayor of any city or town upon written notice given
by any practicing physician of the existence of such
disease. It is evident that this written notice is only
necessary when the mayor acts without authority from
the board of health, and that it is not necessary to confer jurisdiction on such board. That the board of health
had the power to act, and that its action was legal, can not
be seriously questioned. *Beeks v. Dickinson County,* 131
Iowa, 244; *Valentine v. City of Englewood,* (N. J.) 71
Atl. 344.

And, if the defendant did no more than to see that
the requirements of the health board were carried out, he
is not individually liable. *Beeks v. County, supra.* There
is no evidence upon which the jury could

3. SAME: false imprisonment: damages.

have found that the defendant acted beyond
the scope of his authority and with malice,
and the verdict was therefore properly directed for him
when it was determined as a matter of law that he acted
with authority from the board. Indeed, the appellant concedes in argument that, if the defendant acted with proper
authority, there is no liability. See note to *Beeks v.
County, supra;* 9 Am. & Eng. Ann. Cas. 814, and note

in 47 Am. St. Rep. 533. In *State v. Kirby,* 120 Iowa, 26, we held the appellant not criminally liable for breaking the quarantine in question, but that case is not controlling here because of the different facts presented in this case.

As we understand the record, the plaintiff was confined to his own home with his wife and other members of his family. If we are correct in this, it was proper to keep the other members of the family secluded from the public under the resolution of the board of health. There would have been no sense in keeping the plaintiff confined to his premises if the exposed members of his family were permitted to spread the disease.

4. SAME: quarantine of exposed persons.

The judgment of the district court is right, and it is therefore *affirmed.*