## THE STATE OF CONNECTICUT *vs.* MRS. WILLIAM RACSKOWSKI.

Third Judicial District, New Haven, January Term, 1913.
PRENTICE, THAYER, RORABACK, WHEELER and BENNETT, Js.

Before a lawful order of quarantine can be made under General Statutes, § 2549, the health officer must have a reasonable belief that the person ordered into confinement is inflicted with a malignant, infectious or contagious disease.

This particular statute (§ 2549) does not contemplate the confinement of persons merely because they have been exposed to a contagious disease, and therefore proof of that fact alone will not warrant a conviction for an alleged violation of a quarantine order based upon this section.

Authority to make all reasonable health regulations, including the quarantine of those who may have been exposed to contagious diseases, is, however, within the fair intendment of the powers conferred by General Statutes, § 2531, as amended by chapter 15 of the Public Acts of 1905; and the violation of such an order would come within the penalty prescribed by General Statutes, § 2552.

One of the chief ends of government is to protect and preserve the public health, and the legitimate exercise of the power of the State for this purpose is a governmental duty which falls within the police power; and statutes directed to that end should receive a liberal construction.

Health officers are bound not only to make proper regulations to prevent the spread of disease, but also to exercise the highest diligence in enforcing them.

The period of confinement, if not specified in the quarantine order, will be assumed to be measured by the duration of the danger to be apprehended from the disease.

One may violate an order of quarantine by knowingly permitting a child, for whose custody he has been legally made responsible, to violate it.

There is no legal presumption that because children are abroad in violation of an order of quarantine, they are so abroad with the knowledge and consent of their mother.

A presumption of law of this character must find its basis in general experience, or probability, or sometimes on policy and convenience.

What inferences, if any, respecting the guilty knowledge and consent of

the accused, are to be drawn from the circumstances of the case, are questions of fact within the province of the jury.

A court will take judicial notice of the fact that scarlatina and scarlet fever are infectious or contagious diseases.

Argued January 29th—decided April 17th, 1913.

INFORMATION for disobeying an order of the health officer of the borough of Naugatuck quarantining the defendant and her two minor children on account of their supposed infection with scarlatina or scarlet fever, brought to the District Court of Waterbury and tried to the jury before *Peasley, J.;* verdict and judgment of guilty, and appeal by the defendant. *Error and new trial ordered.*

*Lawrence L. Lewis,* for the appellant (defendant).

*Ulysses G. Church,* Prosecuting Attorney, for the appellee (the State).

WHEELER, J. The case went to the jury upon the third count of the information, which charged the accused with having violated an order of the health officer of the borough of Naugatuck quarantining the accused and her two minor children as persons whom said health officer had reasonable grounds for believing to be infected with scarlatina or scarlet fever, a contagious disease, by herself breaking said quarantine and leaving said house, and allowing her two children to do the same.

The information assumed to charge the crime provided for by General Statutes, § 2552, for a violation of an order of said health officer made under General Statutes, § 2549, reading as follows: "Any town, city, or borough, health officer, or the board of health of a city or borough, may order any person, whom they have reasonable grounds to believe to be infected with

any malignant, infectious, or contagious disease, into confinement in a place to be designated by them, there to remain so long as said health officer or board shall judge necessary."

Before a lawful order can be made under this statute, the health officer must have a reasonable belief that the person or persons ordered into confinement are infected with a contagious disease. Before the accused could be convicted under this information the State must prove: 1. A reasonable ground on the part of the health officer to believe the accused or her minor children infected with the contagious disease scarlatina or scarlet fever. 2. An order of said health officer made pursuant to such belief quarantining the defendant and her two minor children. 3. The disobedience by the accused of the order either by breaking the quarantine herself, or allowing her minor children to break it.

The State's case, as the finding discloses, rested upon proof of a reasonable belief on the part of the health officer that said children were infected with scarlet fever or scarlatina, that the health officer, acting under this belief, ordered the mother and said children to remain within their house, and that thereafter both the children and the mother left the house and mingled with people outside the house.

Complaint is made because the court charged the jury that the accused should be found guilty whether she violated the order by going abroad, or, knowing her children to be the subject of the quarantine, permitted them to go abroad with her knowledge and consent.

The record does not show that the accused was either infected with this disease, or that the health officer had reasonable grounds to believe she was so infected. The information charges a violation of an order quarantining the accused because the health officer had reason-

able grounds to believe she was infected with a contagious disease. So that the proof failed to meet the charge. There was, therefore, no basis for the charge that if the jury found the accused herself broke the quarantine by going abroad, it was their duty to find her guilty.

The State points out, with emphasis, the danger to the community if one having been exposed to a contagious disease may not be quarantined by the health authorities. Lest such a want of power may be inferred from our decision, we shall briefly point out the source of power of the health officer to prevent the spread of contagious diseases by an order quarantining those who may have been exposed. This information does not charge the accused with violation of an order of confinement for having been exposed to a contagious disease. The statute upon which it is based does not provide for or contemplate such an order. But this statute is only one of a body of laws designed to protect and preserve the public health. Such an object is a chief end of government, and the legitimate exercise of the power of the State for the accomplishment of such a purpose is a governmental duty which falls within the police power. Its origin rests in necessity. The prevention of the spread of disease is required either by express statutory provision, or by the necessary implication arising out of the imposition of such a duty. *Seavey* v. *Preble*, 64 Me. 120. Our statute, General Statutes, § 2531, as amended by chapter 15 of the Public Acts of 1905, p. 256, invested the health officer of the borough of Naugatuck, in common with the health officer of every city and borough of the State, with "all powers necessary and proper for preserving the public health and preventing the spread of diseases therein." Statutes whose object is the protection and preservation of the public health should receive a liberal construction.

*Whidden* v. *Cheever*, 69 N. H. 142, 143, 44 Atl. 908; 1 Abbott on Municipal Corporations, § 118. The powers conferred by General Statutes, § 2549, to prevent the spread of contagious diseases, are not exclusive and do not limit the power conferred by General Statutes, § 2531, as amended by chapter 15 of the Public Acts of 1905, over the spread of contagious disease, to orders relating wholly to the person who has the disease or whom the health officer has reasonable grounds to believe to be infected with such disease. The power to make all reasonable health regulations, including the quarantine of those who may have been exposed to contagious disease, is within the fair intendment of the powers conferred by General Statutes, § 2531, as amended by the Public Acts of 1905, chapter 15. The violation of such order or regulation would be within the penalty of General Statutes, § 2552. Our health officers are not only bound to make all necessary and proper regulations to prevent the spread of disease, but they are bound to exercise the highest diligence in enforcing these regulations. Common knowledge tells us that contagious diseases may be communicated by those who have been exposed to the disease; and it is the common practice for the health authorities to detain all such persons from going abroad so long as the danger of contagion is imminent from those who have been exposed. *Whidden* v. *Cheever*, 69 N. H. 142, 143, 44 Atl. 908; *Smith* v. *Emery*, 11 N. Y. App. Div. 10, 13, 42 N. Y. Supp. 258. The court sensibly said, in *Kirby* v. *Harker*, 143 Iowa 478, 482, 121 N. W. 1071: "There would have been no sense in keeping the plaintiff confined to his premises if the exposed members of his family were permitted to spread the disease." Worthington & Parker on Public Health, § 114.

Reasonable quarantine regulations by the Naugatuck borough health officer designed to prevent persons

either having, or whom the health officer has reasonable grounds to believe to be infected with, or who have been exposed to, a contagious disease, from intercourse with other persons in the community, are lawful. The prosecution for violation of the regulation must be based upon the order made.

As no complaint is made of this order on the ground that no period of confinement is specified, we assumed the period intended by the order was the duration of the danger from the disease, to be determined by the health officer. Such order was a reasonable quarantine regulation.

The court further instructed the jury, in substance, that if they found proven beyond a reasonable doubt that the accused permitted her children, knowing them to be subject to this quarantine order, to go abroad with her knowledge and consent, they should find her guilty. We think the statute (§ 2552) should be construed to effectuate its object. A mother who directly violates a lawful order of a health board, whether made under General Statutes, § 2549, or not, or who knowingly permits her child, for whose custody she has been legally made responsible, to violate that order, is equally guilty of the offense whose penalty is prescribed by General Statutes, § 2552. The jury might, under the facts before them, have found the existence of such an order.

Error is assigned in charging: "And it is to be presumed upon the showing by the State, that these children were abroad in violation of that order, that they were so with her [the mother's] knowledge and consent until the contrary has been shown by her. That is, the State makes out a prima facie case on the subject of those children violating this order, upon showing that they did in fact violate it."

The court thus assumes, from the fact that these

children were abroad in violation of the order, that it was with the mother's knowledge, and hence with her permission. And this, the court assumes, makes out a prima facie case, and casts upon the accused the duty of introducing evidence in rebuttal of this assumption; in the absence of such rebuttal evidence it is conclusive. A presumption of law of this character must rest upon general experience, or probability, or sometimes on policy and convenience. The general subject was treated with such completeness in *Vincent* v. *Mutual Reserve Fund Life Asso.*, 77 Conn. 281, 287, 58 Atl. 963, as to require nothing additional. Thayer's Preliminary Treatise on Evidence, pp. 314, 336, 340.

Our inquiry is simply to determine whether there exists an experience or probability so general as to have resulted in a presumption of universal acceptance, in the absence of proof to the contrary, that when a child is abroad in violation of a quarantine order, this is with the mother's knowledge and consent, or whether there is any policy or convenience of the law which has compelled the acceptance of such a presumption. We think there is no policy of the law to rest this presumption upon, and that experience proves the reverse of this assumption. A mother's love for, and care of, her sick child, is the general presumption of all people, of all times, and of every social rank. There is no presumption of law that the mother knew and consented to the violation of the quarantine order, and hence the court erred in charging that the State made out a prima facie case against the mother by mere proof of the violation of the order by the children.

Whether any inference was to be drawn of the mother's knowledge and consent to the violation of the quarantine order, from the circumstances of this case, was an inference of fact within the province of the jury. An inference which may or may not be drawn by the

jury is far different from a presumption of law which must be drawn until proof to the contrary is offered.

The demurrer was properly overruled. The information attempts to state two causes of action, one of which was sufficiently stated.

The court was clearly right in taking judicial notice that scarlatina and scarlet fever are infectious or contagious diseases.

There was no occasion, under the circumstances in which the court presented the case to the jury, to specifically define the meaning of the. terms "reasonable grounds to believe," or "confinement," as found in General Statutes, § 2549.

There is error and a new trial is ordered.

In this opinion the other judges concurred.