Darby, J.
Mabel Mason, the petitioner, alleges that she is unlawfully restrained of her liberty by Dr. A. C. Bachmeyer, superintendent of the Cincinnati General Hospital.
The respondent files his' answer admitting the detention of Mabel Mason and justifying it for the following reasons: that she had been admitted to the said hospital upon a quarantine order issued by the health officer of the city of Cincinnati acting under the directions of the acting health commissioner of Ohio. A copy of the quarantine order of the health officer of .Cincinnati is attached to the answer, and sets forth that the respondent was ordered to quarantine the said petitioner by reason of the directions of the commissioner of health, and that the said petitioner had been found or is reasonably suspected of *22 having a venereal disease. Also attached to the answer is the direction of the state commissioner of health to the health officer of Cincinnati directing the quarantine of the petitioner.
The state department of health was created by the act of March 31, 1917 (107.Ohio Laws, 522), and has conferred upon it “all the powers and (shall) perform all the duties now conferred and imposed by law upon the state board of health.”
The powers of the state board of health are set forth in General Code, Section 1237, as follows:
“The state board of health shall have supervision of all matters relating to the preservation of the life and health of the people, and have supreme authority in matters of quarantine which it may declare and enforce when none exists, and modify, relax or abolish when it has been established. It may make special or standing orders or regulations for preventing the spread of contagious or infectious diseases * * * and for such other sanitary matters as it deems best to control by a general rule. It may make and enforce orders in local matters when emergency exists or when the local board of health has neglected or refused to act with sufficient promptness or efficiency, or when such board has not been established as provided by law. ’1
Acting under the authority conferred upon it, the state department of health, on May 2, 1918, adopted certain rules and regulations for the prevention of venereal diseases. These rules define what are designated as venereal diseases, provide for reports of known or suspected cases of such, for instruction to patients and investigation of casés by local health officers. Buie Y is as follows:
“Examination of cases; enforcement. — City, village and township health officers are hereby empowered and directed to make or cause to be made such examinations of persons reasonably suspected of having a venereal disease as may be necessary for carrying out these regulations. Such- examinations shall be made only by regularly licensed physicians. All known prostitutes and persons associating with them shall be considered as reasonably suspected of having a venereal disease. Boards of health and health officers shall cooperate with the proper officials whose duty it is to enforce the laws against prostitution, and shall oth *23 erwise use every proper means for tbe repression of prostitution which, is hereby declared to be a prolific source of venereál disease. ”
It was shown upon the hearing that the petitioner is a known and common prostitute, making her livelihood by such practice in the city of Cincinnati, and that she was at the time of the h&aring infected with venereal diseases.
Rule VI of the regulations of the state board provides as follows:
“Quarantine of diseased persons. — The health officers, when directed by the state commissioner of health, shall immediately institute measures for the protection of other persons from infection by any venereally diseased person, and shall quarantine any person who has, or is reasonably suspected of having, a venereal disease whenever, in the opinion of the state commissioner of health, quarantine is necessary for the protection of the public health. In establishing quarantine the health officer shall designate and define the limits of the area in which the person known to have or reasonably suspected of having a venereal disease is to be quarantined, and no other person than the attending physician, dentist, or necessary attendant shall enter or leave the area of quarantine without the permission of the health officer.”
The order of the health officer established the quarantine in this case to be that of the area of the Cincinnati General Hospital.
On behalf of the petitioner it is claimed that the provision ■authorizing the quarantine and examination provided for by the regulations is in contravention of Article XIV, Section 1, of the Constitution of the United States, and also that it violates Article I, Section 5, of the Constitution of Ohio, which latter provides that the right of trial by jury shall be inviolate.
In Board of Health v. Greenville, 86 O. S., 1, the Supreme Court sustained an act authorizing the state board of health to require the purification of sewage and public water supplies as a valid and constitutional exercise of the police power of the state. On page 20 of the opinion the court, speaking of the propriety of declaring a law unconstitutional, uses this language:
*24 “A court is not authorized to adjudge a statute unconstitutional where the question of its constitutionality is at all doubtful. The question of the constitutionality of every law being first determined by the Legislature, every presumption is in favor of its constitutionality. It must therefore clearly appear that the law is in direct conflict with inhibitions of the Constitution before the court will declare it unconstitutional.”
Section 1237 heretofore referred to which fixes the general powers and duties of the state board of health gives such board and its successor, in matters pertaining to the prevention of the spread of contagious and infectious diseases and quarantine, as broad powers as could be well granted. 'While the term with reference to quarantine “supreme authority” is used, that must be understood as meaning supreme legal discretion or authority and not arbitrary power.
The question as to whether or not a jury trial should be required in such case is settled in Prescott v. State, 19 O. S., 184. The statute under consideration in that case authorized a grand jury to commit a youthful offender to the house of refuge or reform farm, instead of indicting him and causing his prosecution by the ordinary methods. It was objected in that ease that this was violative of the Constitution of Ohio and the Federal Constitution. The court said on page 197:
! ‘ The amendment to the Constitution referred to has no bearing on the case. That provision does not operate as a limitation of the power of the state governments over their own citizens, but is exclusively a ‘restriction upon federal power. This has been repeatedly decided by the Supreme Court of the United States, and in the late case of Twitchell v. Commonwealth, 7 Wall., 321, was not regarded as an open question.
“The provisions referred to in our state Constitution relate to the preservation of the right of trial by jury and the rights of the accused in criminal prosecutions. We do not regard this case as coming within the operation of either of these provisions. It is neither a criminal prosecution nor a proceeding according to the course of the common law in which the right to a trial by jury is guaranteed.
1 ‘ The proceeding is purely statutory; and the commitment in cases like the present is not designated as a punishment for crime *25 but to place minors of the description and for the causes specified in the statute under the guardianship of the public authorities named for proper care and discipline.”
The next contention of the petitioner is that the regulations authorize her detention if “reasonably suspected of having-a venereal disease.” It is said that the detention is actual, and that to detain one and deprive him of his liberty, except upon conviction beyond a reasonable doubt, is not authorized by the laws of Ohio. The Supreme Court in the Prescott case, supra, has settled the question that matters such as this are not criminal in their nature; and the rule of reasonable doubt, of course, could have no effect. If the state board has the authority which it has exercised in this case, it would be entirely destructive of its purposes if, before one could be treated, and quarantined, there must be positive evidence in somebody’s hands that the person is infected with the disease. If one is suspected of the commission of a felony, and there is reasonable ground to believe that he is guilty, án arrest may be made without a warrant. If one is reasonably suspected of carrying concealed weapons he may be arrested without a warrant, and the arrest is justified if he is found actually to be carrying concealed weapons. Ballard v. State, 43 O. S., 340.
In State v. Racskowski, 86 Conn., 677, there was a prosecution for the violation of an order of the health officer quarantining the defendant and her children on account of their supposed infection with scarletina or scarlet fever. The first syllabus is as follows :
“Before a lawful order of quarantine can be made under General Statutes 2549, the health officer must have a reasonable belief that the person ordered into confinement is inflicted with a malignant, infectious or contagious disease.”
That ease is a direct authority for the department of health to pass the regulation authorizing the quarantine of persons reasonably suspected of having venereal diseases. In Turner v. Toledo, 15 Cir. Ct., 627, it is held that,
*26 “Boards of health may, if they think best for the safety o'f the inhabitants, remove persons who have dangerous diseases to a separate house or confine them to their own. It is unquestionable that the Legislature can confer police powers upon public officers for the protection of the public health. ’ ’
In Staas v. State, 15 Cir. Ct. (N.S.), 189, the syllabus is as follows:
‘ ‘ 1. An ordinance forbidding the sale of milk at retail unless it is contained in sealed glass bottles is not unreasonable in its general operation; and a conviction of violating such ordinance will not be set aside on the ground that some other regulation might better serve the public welfare.
“2. Nor is authority to pass such an ordinance an unwarranted delegation of legislative power.”
In that case the prosecution was for violating a regulation of the board of health.
Haverty et al v. Bass, 66 Me., 71; Whidden v. Cheever, 69 N. H., 142, and Parker and Worthington on Public Health and Safety, Section 118, support the general power and authority of local health authorities acting under legislative power to quarantine persons affected or afflicted with a venereal disease or exposed to it.
In line with this general subject are what are known as the vaccination cases, in which the regulations of local school boards forbidding the attendance at public school of children who have not been vaccinated or properly excused from the same, are sustained. In State ex rel v. Board of Education, 76 O. S., 297, the Supreme Court of Ohio very definitely sustained the authority of the board of education to pass such regulations, and said:
“3. Whether a rule or regulation adopted by the board of education under favor of the provisions of the above Section 3986 is a reasonable rule or regulation is to be judged of in the first instance by the board of education; and the courts will not interfere unless it has been clearly shown that there has been an abuse of official discretion.”
To the same effect is State Board of Health v. Board of Trustees, 13 Cal. App., 514.
*27 The regulation in this ease is a proper and legal exercise of local police power, not in contravention of United States Constitution, Article XIY, Section 1.
The prevalence of venereal diseases is a fact well known. The spread of these diseases results very largely from prostitution. It is not only the right but the imperative duty of the state to protect the public from such diseases when and as it can. Public prostitution is a wrong in itself. Those who practice it can not complain if the state authorities employ any means, no matter how drastic, to stamp out the spread of the disease.
The regulations adopted by the state for the prevention of the spread of these diseases by treatment and cure are a proper exercise of the police power of the state. The petitioner having been shown to be one of the class known as common prostitutes, and being infected with the objectionable disease, is clearly within the regulations; and her detention and quarantine were justified under the ample power conferred by the General Code upon the state department of health.
The petition is dismissed.