STOCK *v.* CITY OF HILLSDALE.

1. WATERS AND WATERCOURSES—RIPARIAN RIGHTS—DIVERSION—
MUNICIPAL CORPORATIONS.

    A city, as an upper riparian owner, has not the right to divert water from its natural course for the use of its citizens generally, nor to supply manufacturing establishments within its limits.

2. SAME—PRESCRIPTIVE RIGHTS.

    On a bill to enjoin the diversion of water, it appeared that, at the time defendant desired to use the water, it, through a committee of its common council, approached complainant for the purpose of obtaining his consent to such use; that complainant then made a proposition to said committee which was never acted upon by the council; that defendant constructed its plant and commenced to use the water, furnishing to complainant and collecting pay therefor, and for more than 20 years continued such use. *Held*, that, by such use in open defiance of complainant's rights, and his knowledge thereof, defendant acquired title by prescription to an amount of such water equal to the amount being used 15 years before the time complainant's bill was filed.

3. INJUNCTION—ENFORCEMENT OF LEGAL RIGHTS—DISCRETION OF COURT.

    On a bill for an injunction, a court of equity will take into consideration, not only the complainant's bare legal rights, but the damage which will result to a defendant from the enforcement of such legal rights, as well as the question of delay in bringing the proceedings; and where for more than 20 years complainant had known of defendant's asserted right to use said water as a source of water supply, that this use had increased with the growth of the city, and that defendant had incurred large obligations and expended large sums of money, and had gone too far to recede without serious loss to itself, the court did not abuse its discretion in denying an injunction to restrain a further extension of such use.

4. WATERS AND WATERCOURSES—RIPARIAN RIGHTS—DIVERSION—
REMEDY.

    A riparian proprietor has no title to water as such, but only to its unimpeded flow; and where an upper riparian proprietor

diverts such water to his damage he is entitled to maintain an action either at law or in equity. And if the upper riparian proprietor diverted such water at times of the year when the diversion was no damage to the lower proprietor, such use, if unlawful, was damnum absque injuria.

5. INJUNCTION—DAMAGES IN GROSS.
Though complainant, in a bill to restrain the unlawful diversion of water of which he is a lower riparian proprietor, has not shown himself entitled to an injunction, the court having obtained jurisdiction, will retain it and award complainant his damages in gross.

Appeal from Hillsdale; Lockwood, J., presiding. Submitted November 12, 1908. (Docket No. 42.) Decided February 2, 1909.

Bill by Frederick W. Stock against the city of Hillsdale to enjoin the diversion of certain water. From a decree dismissing the bill, complainant appeals. Modified and remanded.

*James S. Galloway* and *Wilson & Cobb* (*Dallas Boudeman*, of counsel), for complainant.

*Merton Fitzpatrick* (*Grant Fellows*, of counsel), for defendant.

MONTGOMERY, J. The bill in this case is filed to obtain an injunction restraining the defendant from increasing the capacity of its water plant or from laying any more pipe into Bawbeese Lake and connecting the same with said water plant, and thus diverting the water from the water of the St. Joseph river to the damage of the complainant as a lower riparian owner. The bill alleges: That the complainant is, and for many years has been, the owner of the water power of the St. Joseph river at the city of Hillsdale, and also of the water power at Litchfield in the county of Hillsdale; that he has expended many thousands of dollars in constructing and maintaining dams and mill races for the purpose of conducting

the water of said river to these mills; that for many years he has depended upon the waters for running and operating his mill at Hillsdale and producing steam to propel the engine and condenser used in the mill; and that said water power is and has been at all times of great value to complainant.

It appears from the testimony: That in 1885, and prior thereto, the question of procuring waterworks for the city of Hillsdale was agitated by the council; that a committee was appointed, of which the complainant was a member, to investigate the sources of supply; that the committee made report to the council naming certain springs of water and Bawbeese Lake as sources of supply which they might adopt. A committee was appointed by the common council to have charge of the matter of constructing a system of waterworks. This committee purchased a tract of land upon the shore of Bawbeese Lake and a right of way from this tract across other lands to the city limits for the purpose of laying water mains. The committee, under direction of the common council, erected a pumping station upon the lands purchased by them on the shores of Bawbeese Lake, and connected a well in this pumping station with the waters of Bawbeese Lake by an intake pipe, and from it the water is pumped through a water main to the city of Hillsdale and through its water system. The construction of the entire system was completed early in the year 1886, since which time the water from Bawbeese Lake has been pumped through the mains laid in the streets of the city and supplied to all the citizens. Since 1885, the city of Hillsdale has grown rapidly. A record has been kept of the number of gallons pumped each day since 1888, and it shows that in 1892 the number of gallons pumped was 144,241,000. The quantity increased gradually until in 1906 the quantity pumped was about 340,000,000. The records kept by the city show 385,000,000, but allowing for slippage of the pumps, caused by wear, the amount actually taken was something like 22 per cent. less.

The complainant had, prior to 1893, operated an electric lighting plant in connection with his mill and furnished electric light to the city of Hillsdale and to its citizens. At this time a disagreement arose between the complainant and the city, and some litigation was pending between the parties. The complainant proposed to sell his electric lighting plant to the city, and the city purchased this plant and paid the complainant $10,000 therefor in bonds of the city. It appears that the complainant then knew it was the purpose of the city to remove this plant to the pumping station and operate it in conjunction with the waterworks system and by the same power plant. The lighting plant was removed in 1893, after its purchase by the city, to the pumping station, and large repairs and additions made to it, and it has been ever since operated by the city in conjunction with the waterworks. In 1906 the city determined upon increasing the capacity of this waterworks so as to give a greater supply of water and greater force. The question of bonding the city in order to raise money for this purpose was submitted to the electors, and the issuance of the bonds was authorized. By this plan the capacity of the waterworks system was to be practically doubled; additional power and new pumps being installed.

It is said in the brief of counsel that a reference to the proofs fails to show any knowledge by complainant of the intention to increase the amount of water to be taken from the lake; but it would appear from the letter of complainant to the council, written August 27, 1906, that he had learned of the intention to withdraw a greater amount of water than heretofore from Bawbeese Lake, among other sources, from the official records of the council's deliberations. The council had on the 12th of March, 1906, provided for the submission to the people of a proposition for water plant betterments, and to raise $16,000 for that purpose, which proposition was carried by the people. These bonds were issued and sold, and some time in April consulting engineers were employed and came on to super-

vise the work of reconstructing and enlarging the plant. Just how much was done prior to the protest of August 27th is not quite clear; but on August 27th a protest was made by the complainant to the common council claiming that, in attempting to double the capacity of the water-works, the city was ignoring complainant's lawful property rights. This notice was ignored by the council, they proceeded with the work, and at the time of the filing of this bill, which was on the 6th day of October, 1906, very considerable progress had been made in the construction of the works, and a large amount of money expended.

The claim of the complainant is: That, by reason of the pumping of water by the defendant out of Bawbeese Lake, the supply of water to his mills is decreased, and that he has been deprived of the use of his water wheels; that he is now able to operate only one wheel, and he can operate this only on the average of two months a year; and that by reason of this failure of water he has taken out all the wheels except the larger one. He also claims that by reason of the diminished flow of water he has insufficient water to use in the condenser, which is a part of the steam plant installed. The learned circuit judge was of the opinion that the pumping of the water from Bawbeese Lake had not seriously affected the flowage of water in the St. Joseph river at Litchfield. The conclusion was based upon the fact that there are other sources of supply flowing into the St. Joseph river between Hillsdale and the mill at Litchfield, and upon the further fact that by the sewage system of the city the water pumped from Bawbeese Lake found its way back into the St. Joseph river before reaching the complainant's mill at Litchfield. The circuit judge properly held that the city had not the right to divert the water as an upper riparian owner and to pump the water out of this lake for the use of citizens generally and to supply manufacturing establishments within its limits, and he also found that the use of the water in the manner in which it was used by the city had affected seriously the flow of water to the complainant's mill

properties, and implied that he had suffered some damage. He was also of the opinion that, had the complainant filed his bill promptly when it was first proposed to take water out of Bawbeese Lake, he would have been entitled to the injunction; but he held that, under the circumstances of this case, the complainant was not entitled to this special writ, but should be left to his remedy at law. Complainant has appealed here.

The complainant attempts to excuse his failure to file a bill when the plant was first established by the following facts: It appears that in 1885 a committee of the council approached complainant for the purpose of getting his consent to the city's making use of the waters of Bawbeese Lake, and that he then made them a proposition that he would grant the right to take 500,000 gallons daily if the city would pay him $500 a year and supply him with water for his condenser to the amount of 250,000 gallons daily. The council committee gave no definite answer to this proposition, but went on and constructed the works, and it is claimed under these circumstances that the complainant had a right to infer that the city had taken possession as licensee. We think this contention cannot be sustained. It must have been known by the complainant that the committee of the defendant had no power to enter into a contract with him except upon the approval of the common council, and it further appears that, within a short time after the establishment of the plant, the city commenced rendering bills to complainant for the use of the very water which he claimed was to constitute a part of the consideration to him, and received pay therefor. It is true that he protested in making the payments for this water, but it is not clear that he protested upon this ground. But whether he did or not, the fact that the city was exacting pay for this water was notice to him that it was not proceeding under the authority conferred by his unaccepted proposition, and from that date forward it appears that the city was proceeding in defiance of his rights, and by his own testimony it

appears that this was understood by him. For more than 20 years before the filing of this bill, the city had occupied this plant, used this water without any proceedings being taken by complainant, and in defiance of his rights, and has very clearly acquired a title by prescription. But it is contended that this did not give the city the right to use a larger amount than the amount taken from the lake beginning with a date 15 years prior to the filing of the bill; in other words, that the prescriptive right should be limited to the 144,241,000 gallons per year which the city was using as early as 15 years prior to the beginning of the suit. The complainant is undoubtedly right in the contention that the prescriptive right of defendant would be limited to substantially the amount of water which had been used for the prescriptive period; but it by no means follows that a remedy by injunction would be open, for year after year the use of this water had increased, until at the end of the period it was substantially 340,000,000 gallons, and no relief by injunction had been sought.

But it is further contended that, even if this be assumed, the complainant would have a right to restrain a further extension of this water plant. The circuit court was of the opinion that in the exercise of a proper discretion a writ of injunction should not be allowed, and he based his decision upon *McKee* v. *City of Grand Rapids,* 137 Mich. 212; *Edwards* v. *Mining Co.,* 38 Mich. 46; *Fisk* v. *City of Hartford,* 70 Conn. 720; and *City of Logansport* v. *Uhl,* 99 Ind. 531. We think his conclusion in this respect is correct. The cases cited are authority to the proposition that a court of equity will take into consideration not only the complainant's bare legal rights, but the damage which will result to a defendant from the enforcement of such legal rights, as well as the question of delay in bringing the proceedings. In determining this question, it is not quite logical to wholly separate the scheme of enlarging the capacity of the plant from the original scheme of constructing water-

works to supply the city with water. The complainant knew that for 20 years or more the defendant had asserted the right to use Bawbeese Lake as a source of water supply to supply the inhabitants of the city, and that this use had been made of water in increasing quantities as the increasing demands of the city required. There was nothing new therefore in the proposition to increase, rebuild, and enlarge the plant so as to increase the capacity beyond that of the original plant. It was simply in furtherance of the original scheme and original policy, upon which large amounts of money had been expended with the knowledge of the complainant and without his active interference. More than this, before he actively interfered by an application for a writ of injunction, or did more than to offer a protest, the city had incurred large obligations, had expended a considerable amount of money, and had gone too far to recede without very serious loss to itself. Indeed, some of these expenditures preceded even the formal protest. We think therefore the circuit court was right in holding that the writ of injunction should not be allowed.

The question presents itself, however, as to whether the complainant should be remanded to his remedy at law. It is the contention of the complainant that there should be an accounting had, and that he should be allowed for the value of the water above the amount as to which the prescriptive right was acquired, and damages awarded him therefor. We think this is a mistaken view of the complainant's rights. He has no title to the water as water in Bawbeese Lake. It is only where the diversion of the water from Bawbeese Lake has affected his rights as a lower riparian proprietor that he is entitled to maintain an action either at law or in equity. The water is not a commodity that he could himself lawfully divert and sell, but his damages would be measured by the actual damage resulting from the failure to allow the water to flow through the St. Joseph river. There were times of the year when there was no such damage to him, and the

use of the water, if not lawful, was damnum absque injuria.

It is also evident that the claims of the complainant to compensation for the interruption of his business are very largely overestimated and exaggerated. The complainant purchased the old mill in 1869 and operated it as a water mill. At the end of six months, however, he testified: That he discovered that the water was irregular, and that he then connected the old engine and boiler that was in the mill when he purchased it; that in the spring of the year, when there was plenty of water, he ran the mill without steam; that he ran thus for five or six years; that the capacity of the mill has been increased down to the present time, until now it has a capacity of 1,200 barrels a day; that the old engines have been replaced with an engine of 400 horse power, requiring about a quarter million gallons of water for condensation purposes alone. Before the waterworks were put in, one of the wheels had been discontinued. Soon after, another was discontinued, and this at a time when the city was taking only about 500,000 gallons a day out of a total of 15,600,000 gallons.

It is undeniable, however, that the complainant's rights were infringed by diverting this water, and that the value of his property—the mill at Hillsdale—was to some extent affected by this fact, and we think that the rights of complainant may well be adjudged in this case. The complainant's damages should be awarded in gross, even though he has not shown himself entitled to a writ of injunction. See *Blake* v. *Cornwell*, 65 Mich. 467, and *Allen* v. *Electric Co.*, 144 Mich. 370.

The decree will be modified to this extent, and the case will be remanded, with the privilege of putting in further testimony upon the distinct question of the damage to complainant's property by the conversion of the water for the use of the city to the extent of the capacity of the improved plant, as well as for the damage sustained by the

increased use of water above the amount fixed by the prescription for the period of six years prior to the filing of this bill, and for this amount decree should be entered by the circuit court for the complainant, with costs.

OSTRANDER, HOOKER, MOORE, and McALVAY, JJ., concurred.