CITY OF BATTLE CREEK v. GOGUAC RESORT ASSOCIATION, LTD.

1. WATERS AND WATERCOURSES — RIPARIAN RIGHTS — CITIES — WATER SUPPLY.

Where complainant, a municipal corporation, purchased land on the border of a small lake for the purpose of constructing a system of water supply, and the vendor made the conveyance with knowledge of the intention to expend money in building a pumping station, neither he nor his assignee or successor in title was entitled to pollute the waters of the lake by using his adjacent resort for bathing purposes.

2. SAME—DAMAGES—DIVERSION—MUNICIPAL CORPORATIONS.

The right of a riparian owner in the water of an inland lake is usufructuary only, but the diversion for municipal purposes will not be restrained, unless the use results in injury to the complaining proprietor.

3. SAME.

The grantee of the proprietor who made the sale to such municipality could not complain of any use which would be valid, as to original grantor, and also, would be enjoined from polluting the water in any manner which the grantor could not himself do.

181 Mich.—16.

4. SAME—DRINKING PURPOSES—INJUNCTION.

    Pollution of the water of a lake by bathing is an unreasonable and unlawful use as to a city which is entitled to make use of the water for drinking and domestic purposes.

STONE, OSTRANDER, BIRD, and MOORE, JJ., dissenting.

Appeal from Calhoun; North, J. Submitted April 25, 1913. (Docket No. 88.) Decided July 24, 1914.

Bill by the city of Battle Creek against the Goguac Resort Association, Limited, and others for an injunction. From a decree for complainant, defendants appeal. Affirmed.

*D. C. Salisbury* (*O. S. Clark*, of counsel), for complainant.

*Stewart & Sabin*, for defendants.

BIRD, J. The complainant, as well as the defendant association, are riparian owners on Lake Goguac. This lake is near the city of Battle Creek, and covers 360 acres, and is fed by subterranean springs. Complainant purchased a parcel of land bordering on the lake in 1886, and commenced to take therefrom its water supply in 1887. From that time on, its consumption of the water increased, until it reached upwards of 3,000,000 gallons per day at the time this suit was filed. The defendant association is the owner of lands bordering on the lake adjoining those of complainants. It maintains a summer resort and bathing beach during the summer months. Complainant has for some time objected to the bathing at the resort, on the theory that it polluted and rendered the water unfit for the use of its inhabitants. Its protests were not heeded by the association, nor by the other defendants who own and manage it. In order to enforce what it conceived to be its rights, this bill was filed to perpetually restrain the defendants from operating

their bathing beach. The chancellor who heard the case granted the relief prayed, and the defendants have appealed. The most serious question raised by defendants is that the complainant has no such right to the use of the water as entitled it to the relief granted.

Both complainant and defendants are riparian owners, and as such, in common with others, they own the bed of the lake, and by virtue of such ownership both have a right to a reasonable use of its waters for domestic, agricultural, and mechanical purposes. *Clute* v. *Fisher*, 65 Mich. 48 (31 N. W. 614) ; 40 Cyc. p. 635. Unless the complainant can show that it has some right other than that which arises by reason of riparian ownership, it has no greater right in the waters than have the defendants. As a riparian owner, the complainant has no right to divert the water for the purpose of selling it to the inhabitants of Battle Creek. *Stock* v. *City of Hillsdale*, 155 Mich. 375 (119 N. W. 435) ; *Smith* v. *City of Rochester*, 92 N. Y. 463 (44 Am. Rep. 393) ; *Ulbricht* v. *Water Co.*, 86 Ala. 587 (6 South. 78, 4 L. R. A. 572, 11 Am. St. Rep. 72) ; *Lord* v. *Water Co.*, 135 Pa. 122 (19 Atl. 1007, 8 L. R. A. 202, 20 Am. St. Rep. 864) ; *Sparks Manfg. Co.* v. *Town of Newton*, 57 N. J. Eq. 367 (41 Atl. 385).

The question therefore gets around to this: Whether one riparian owner is entitled to equitable relief as against another riparian owner, to aid him in diverting the water to uses other than for riparian purposes. If this were a suit by complainant to protect its right to some reasonable use of the water incidental to its riparian ownership, it would present a different question, but when it seeks relief of this character to facilitate its business of unlawfully diverting the water, it prays for relief to which it is not entitled as a mere riparian owner. But counsel

argue that the complainant's right is something more than a riparian right, and point to a legislative act whereby the city was authorized to go beyond its corporate limits to acquire water rights and, when acquired, to protect such rights against pollution. Act No. 428, Local Acts of 1887. We are unable to see how this act has any force in these proceedings. That act authorized the complainant to go beyond its corporate limits and acquire water rights by purchase or condemnation, which right it did not then have until the act was passed. *Houghton Common Council* v. *Mining Co.,* 57 Mich. 547 (24 N. W. 820). In pursuance of this act, the city purchased a small parcel of land on the shore. The city has never exercised its authority under this act, except to become a riparian owner. If in pursuance of this act complainant had acquired all the water rights at Goguac Lake, either by purchase or condemnation, it would then be in a position to insist upon what it is now insisting upon. The act does not attempt to enlarge the riparian rights of the complainant at the expense of the other riparian owners, and indeed the legislature would have no authority to confer such rights upon the city without compensation being made therefor.

Another claim made by complainant is that it has acquired the right by prescription to take its water supply from the lake. Defendants' riparian rights began in 1885, before complainant's did. When complainant purchased, it was with the view of putting down wells; later it installed an intake. As the use of the water by the city increased, the lake was lowered to such an extent that defendants filed a bill to restrain complainant from lowering the water and interfering with their riparian rights. The city recognized the rights of the defendants and other riparian owners by diverting Minges brook into the lake, which action brought the lake back to its normal level, since which time it has been so maintained.

After diverting Minges brook into the lake, the chancery suit was discontinued by stipulation. The record shows no such adverse use of the water as would ripen into a prescriptive right; but, even if we assume to the contrary, the right acquired would be no more than the right to take the water subject to the use which the defendants and their predecessors in title have made of it since the resort was established in 1885. The prime object of the city in filing this bill was not to establish its own right to use the water as it has been using it, but to restrain defendants from making the use of it which they have made since 1885. If this relief is to be granted, it should be based upon some right. The city has shown no prescriptive right, and as a riparian owner it would be entitled to no such relief. Were the city attempting to establish its right to take the water as it has done in the past, other questions might arise which are not important on this record.

In view of the conclusion reached upon this question, it will be unnecessary to consider the other questions raised. The decree of the trial court will be reversed, and the bill dismissed, with costs to defendants.

STONE, OSTRANDER, and MOORE, JJ., concurred with BIRD, J.

BROOKE, J. I find myself unable to agree with the conclusions of my Brother BIRD in this case. In addition to the facts stated by him in his opinion, it should be noted that the complainant city of Battle Creek purchased the land upon which it located its waterworks from one Surby, who was at that time and for many years had been conducting a summer resort in a small way upon the banks of the lake. He sold to the city a portion of his land with the knowledge that the city intended to erect a pumping station thereon

and to supply its citizens with drinking water from the lake. His resort business at that time was insignificant, though the record tends to show that bathing by his patrons was indulged in to some extent. Surby not only stood by and saw the city expend a large amount of money in the establishment of its plant, but actually sold the land to the city to be used for that purpose. Some time after the city had placed in operation its waterworks, the defendant resort association purchased from Surby his adjacent lands, and rebuilt the buildings and added many attractions in order to induce large patronage; among these was the establishment of a bathing beach with dressing rooms and other necessary accommodations for its patrons. It further appears that at the time the city established its pumping station upon the shores of the lake, the lake had no visible inlet or outlet, but was supposed to be fed by springs. The use of the water by the complainant city had a tendency to reduce the mean level in the lake, and after some years the recession of the waters became so marked as to cause much complaint from other riparian owners, whereupon the city secured the right to divert a small stream called Minges brook from its natural course into the southerly end of the lake, since which time it has been able, through a proper manipulation of the waters of such brook, to maintain the lake at its normal level, although in the meantime the daily consumption of the city has reached something like 3,000,000 gallons. It will thus be seen that the taking of the water from the lake by the complainant inflicts no injury upon the defendant or other riparian owners. It further appears that since the establishment of said plant the city limits of the city of Battle Creek have been extended so that they now embrace the entire site of the waterworks plant upon the banks of the lake as well as a further very considerable frontage, apparently used as a public park.

My Brother Bird's opinion proceeds upon the theory that the use complainant is making of the waters of this lake is both unreasonable and unlawful. Under the circumstances disclosed by this record, I find myself unable to agree with him on either proposition. No person has a property right in water. The right is usufructuary only, and the modern authorities all tend to establish the principle that one riparian owner may not restrain the use of the water by another riparian owner for nonriparian purposes, unless such use results in injury to the first. The very recent case of *Stratton* v. *Mt. Hermon Boys' School*, 216 Mass. 83 (103 N. E. 87), is instructive upon this point. There the defendant, a riparian owner, took the water from a running stream and diverted it to nonriparian lands upon a different watershed, for use upon lands wholly separated from its riparian lands. The case contains a very full review of all the authorities. It is there said:

"The question in such a case is not whether the diversion, being for a legitimate use, is in quantity such as is reasonable, having regard to all the circumstances, as it is in cases of distinctly riparian uses, but only whether it causes actual damage to the person complaining. * * * That there can be no recovery for a diversion of water for a proper use, so small in quantity and of such character that it occasions no injury to the present or future use of the lower riparian land is recognized in other jurisdictions"—citing cases.

I am further of the opinion that the complainant is entitled to the relief prayed upon the ground of estoppel. As before pointed out, the parties held title as riparian owners from a common grantor, Surby. It is to my mind entirely clear that Surby, having sold a part of the land belonging to him upon the shore of the lake for the purpose of enabling the city to establish a system of waterworks for the sup-

plying of drinking water to its inhabitants, would not be heard to say that he had the right to make such use of the waters upon his adjoining lands as would render waters taken by the city unfit for the contemplated use. When the resort association purchased from Surby, it purchased with constructive knowledge that the city had bought from its grantor, and with actual knowledge of the fact that the city was then taking its supply of drinking water from the lake by means of its plant, plainly visible. Under the circumstances I am of opinion that Surby's grantee is under exactly the same disability that would attach to Surby had he attempted to render his grant valueless by a pollution of the waters immediately after the grant was made.

I am further unable to agree with the proposition that the use which the defendant resort association is making of the waters of the lake is, under the circumstances, either reasonable or lawful. In the case of *People* v. *Hulbert*, 131 Mich. 156 (91 N. W. 211, 64 L. R. A. 265, 100 Am. St. Rep. 588), the court held, though with some apparent difficulty, that Mr. Hulbert, a riparian owner, could not be punished for bathing in this lake, although his act was in violation of a legislative enactment. Act No. 428, Local Acts 1887. Whatever may be said of the propriety of this decision, and its soundness is questioned by complainant, it is apparent that the court was mindful of the possibility of future developments when it very carefully limited the effects of the decision to the single point then in issue. Mr. Justice Moore, in concluding his opinion, said:

"In what we have said we do not mean to intimate that an upper proprietor may convert his property into a summer resort, and invite large numbers of people to his premises for purposes of bathing, and give them the right possessed only by the riparian

owner and his family.   We are undertaking to decide only the case which is presented here."

This court thus clearly foreshadowed its probable action if such a case arose.   It is unnecessary to predicate complainant's right to relief upon the fact that the health of 30,000 people is endangered by defendants' unlawful acts.   The city as a riparian owner, with but a single resident upon the land who used or was entitled to use the waters of the lake for drinking purposes, would have the absolute right to enjoin his neighbor from making such use of the water as would render it unfit for drinking purposes.

Defendants filed a cross-bill, in which it asks that complainant be restrained from diverting any of the waters of the lake through its pipes.   Even if complainant's use of the water was wrongful, injunctive relief would be denied.   *Stock* v. *City of Hillsdale,* 155 Mich. 375 (119 N. W. 435).

I am of opinion that the decree of the circuit court should be affirmed, with costs to complainant.

MCALVAY, C. J., and KUHN, and STEERE, JJ., concurred with BROOKE, J.