## HOLCOMB *v.* ALPENA POWER CO.

1. INJUNCTION — RIGHT TO RELIEF — PERMANENT STRUCTURES — EQUITY—REMEDY AT LAW—DAMAGES.

   Where the owner of land bordering on a lake has had knowledge for a number of years of the increased height of the water due to a dam of a power company, has stood by and allowed the company to spend a great deal of money in acquiring flowage rights and in making other large investments, and, in two different actions, has recovered and been paid damages for overflow for a series of years, he is not entitled to an injunction to compel the lowering of the dam to its former height, but the case will be remanded to take proofs on the question of damages in full satisfaction for the damage, past and prospective.

2. WATERS AND WATERCOURSES—FLOODING LANDS—DAMAGES, MEASURE OF—PERMANENT INJURIES.

   The measure of damages for the overflow of land bordering on a lake, due to the increased height of a dam, is the difference in value of the property as it is and as it would be if the dam had remained without alteration.[1]

---

[1] On the question of liability for damming back water of stream by increasing height of dam, see note in 59 L. R. A. 874.

On the question of liability of one damming back water of stream, for injury by flood, see comprehensive note in 59 L. R. A. 817, 28 L. R. A. (N. S.) 156.

Appeal from Alcona; Widdis, J. Submitted June 7, 1917. (Docket No. 4.) Decided September 27, 1917.

Bill by Samuel Holcomb against the Alpena Power Company, Limited, to restrain the maintenance of a dam. Defendant filed a cross-bill to determine plaintiff's past, present and future damages from such maintenance. From a decree for plaintiff, defendant appeals. Reversed, and remanded.

*Joseph H. Cobb,* for plaintiff.

*Henry & Henry,* for defendant.

MOORE, J. The plaintiff is the owner of a valuable farm situated a short distance from the shores of Hubbard lake. Many years ago a dam was erected at the north end of Hubbard lake. This dam until 1906 was used by the log owners in sluicing forest products out of Hubbard lake and driving them down the lower south branch of Thunder Bay river. It passed into the control of the Alpena Power Company, Limited, in the year 1905.

It is the claim of plaintiff that since 1905 and from that date the power company has raised the water in this lake from 2½ to 3 feet higher than it was carried before 1906, and that this increased height of the water flows and injures the plaintiff's farm. Litigation followed the making higher of the dam, which found its way to this court (see 175 Mich. 500 [141 N. W. 534]), where a verdict of $1,080.70 for damages for the years 1907, 1908, and 1909 was affirmed. Later the plaintiff sued for injury to his crops for the years 1910, 1911, 1912, and 1913, and recovered a judgment for $1,398, which was paid. The plaintiff filed this bill in the circuit court in chancery to compel the defendant to take down its dam to the point where it was previous to 1906. The case was heard and a decree

entered in favor of the plaintiff. From this decree the defendant has appealed to this court.

The plaintiff to maintain the issue upon his part, introduced the pleadings, charge of the court, verdict, and judgment of the court in the two law cases, and gave testimony tending to show the defendant has continued to maintain the water in Hubbard lake by means of this dam to practically the same heights from the year 1906.

The defendant filed a cross-bill and asked the court to take testimony as to plaintiff's damages and to render a judgment and decree for such damages, past and prospective, giving the defendant the right to maintain and operate its dam in the future the same as it has done since 1906. The court refused to entertain this proposition, deciding the two law cases were *res adjudicata*.

I quote from the brief of the plaintiff:

"The attorneys then stipulated they would take such testimony as either side desired to introduce upon the condition of the water in the lake, value of plaintiff's property, and the value of defendant's property bearing upon the question of whether or not the defendant is entitled to the relief claimed and prayed for in its cross-bill so that this proposition could be determined upon this appeal. Under this stipulation no evidence of damages was introduced; this question being left open for further proofs providing this court should decide the plaintiff is not entitled to the relief granted to him by the trial judge."

We quote from the brief of defendant:

"Defendant in its cross-bill prays that it be permitted to maintain and operate its dam in its present condition. It further asks that, if the court shall determine that plaintiff's land is damaged by reason of the facts set up in the bill of complaint, the court ascertain the extent to which plaintiff has been damaged and will be damaged for all time, and the amount of damages and award to the plaintiff such amount as

permanent damages. * * * We ask that it remand the case to the circuit court for Alcona county in chancery, for the determination by that court of the damages, if any, to which plaintiff is entitled as prayed for in our cross-bill."

Many interesting questions are presented and argued by counsel, but we think the testimony of the plaintiff simplifies the situation. We quote part of it:

"In 1905 I had full knowledge of the condition of the lake. In 1905 I had full knowledge of the condition of the lake and knew the condition of the dam.

"*Q.* You knew that as well as anybody that lived around there?

"*A.* Yes, sir.

"*Q.* From that time until the present time you have known very particularly about the lake and the dam?

"*A.* Yes; I have known the lake.

"*Q.* And when you started the first suit—before you started the suit you went to the dam and looked at it?

"*A.* Yes.

"*Q.* You have kept track of the dam ever since?

"*A.* Yes. * * *

"*Q.* How long before they built it did you have information that they were going to build it?

"*A.* Probably a year or such a matter. * * *

"*Q.* You had knowledge of all the cases that have been brought?

"*A.* I have had knowledge of some of them; yes. * * *

"*Q.* You had knowledge for the past ten years that the power company were acquiring flowage rights around this lake and dam, acquiring some and attempting to acquire others?

"*A.* Yes. * * * I remember the circumstances of George P. Smith and W. H. Le Roy coming to me in reference to buying my flowage rights on my farm for the purpose of raising the water in Hubbard lake. I think it was in 1905, away along about July, I think. They wanted to buy my flowage rights; they said the water would bother me. They said they were going to raise it and it would bother me and they wanted to buy my flowage rights.

"*Q.* Up to the time they came there and wanted to

buy your flowage rights how had they manipulated this dam in reference to letting the water go out the 1st of June or some time along there, and letting the lake run down?

"*A.* The water went down, until about 1906 the water wasn't held up—until 1906 the water was not held up, except there might have been one or two years, or not so much; after that it was held up steady all the summer long, except one year, I think it was 1910, it was drawed out a little earlier."

The record discloses that between 1906 and the beginning of the instant case defendant invested a good deal of money in acquiring flowage rights about the lake, and made other large investments, the value of which is largely dependent upon the continued use of the dam. About ten years were allowed to intervene after the erection of the dam before the filing of this suit.

It is probable, under the cases cited by his counsel, that if plaintiff had promptly appealed to the chancery side of the court, he could have made a case for injunctive relief, but he did not see fit to do so. Knowing the dam was to be increased in height, he took no steps to prevent it, but appealed to the law side of the court, where he has recovered and been paid damages for overflow for a series of years.

The principle involved in the case is not new in this court. We shall not quote from the cases, as they are so easily accessible. Some of them are *Jacox* v. *Clark*, Walk. Ch. 249; *Payne* v. *Paddock*, Walk. Ch. 487; *Blake* v. *Cornwell*, 65 Mich. 467 (32 N. W. 803) ; *Miller* v. *Cornwell*, 71 Mich. 270 (38 N. W. 912) ; *McKee* v. *City of Grand Rapids*, 137 Mich. 200 (100 N. W. 580; *Howard* v. *Bellows*, 148 Mich. 410 (111 N. W. 1047) ; *Reason* v. *Peters*, 148 Mich. 532 (112 N. W. 117) ; *Cornwell Manfg. Co.* v. *Swift*, 89 Mich. 503 (50 N. W. 1001) ; *Allen* v. *Electric Co.*, 144 Mich. 370 (108 N. W. 79, 115 Am. St. Rep. 453) ; *Stock* v. *City of*

*Hillsdale*, 155 Mich. 375 (119 N. W. 435) ; *Morrison* v. *Power Co.*, 181 Mich. 624 (148 N. W. 354).

We think the judge erred in the instant case in granting injunctive relief, and that he should have permitted the testimony offered on the question of damages.

The decree is reversed, and the case is remanded to take proofs on the question of damages in full. These should be computed upon the basis of the difference in value of plaintiff's property as it is, and as it would be if the dam had remained as it was in 1905. The defendant will recover its costs.

KUHN, C. J., and STONE, BIRD, STEERE, BROOKE, and FELLOWS, JJ., concurred. OSTRANDER, J., did not sit.