THE CONNECTICUT COMPANY *vs.* THE TOWN OF
STAMFORD.

Third Judicial District, Bridgeport, April Term, 1920.
PRENTICE, C. J., WHEELER, BEACH, GAGER and CASE, JS.

An order requiring a street-railway company to relocate its track in the highway, preparatory to widening and grading the street and laying a permanent pavement thereon by the municipality, is an exercise of the police power to which the railway company is subject, provided only the order is in the interest of public safety, health and morals, and is reasonable under all the circumstances.

The street-railway may under the police power be compelled to change

its grade, or location, or the manner of its use of the highway when the public welfare requires it.

The determination of the reasonableness of such an order is a judicial question and the courts in the end determine whether the order is a legitimate exercise of the police power.

Whether such an order meets the test of reasonableness must be determined by the facts from which the ultimate conclusion of the trier is drawn and not by this conclusion.

In the present case the order required the street-railway company to shift its track, for the distance of a mile or more, from the side to the middle of the highway in a sparsely settled region. It was found that the cost of doing this would be $28,000 or more, that the physical valuation of this particular line of railway was only $45,000, and that after allowing a return of five per cent on this sum, the line had been operated at a small loss during the preceding fiscal year. *Held* that under these circumstances, and in the absence of any finding that the company's existing location was dangerous either to the public on the highway or to passengers in the cars, the order in question must be held to be confiscatory in its nature and unreasonable.

The Public Utilities Commission in determining the question of the relocation of a street-railway track in the highway acts in an administrative capacity; but its order must be within its powers, otherwise it is subject to review by the courts.

Upon an appeal from such an order, this court must reach its own solution without regard to the expediency or wisdom of the action taken by the commission, and without substituting its own judgment as to what is reasonable for the judgment of the commission.

Argued April 16th—decided June 10th, 1920.

APPEAL by the plaintiff from an order of the Public Utilities Commission confirming a like order of the selectmen of the town of Stamford directing the plaintiff street-railway company to change the location of its tracks in Hope Street in said town, from the side to the middle of the highway, taken to and tried by the Superior Court in Fairfield County, *Webb, J.;* facts found and judgment rendered affirming the order of the Public Utilities Commission, from which the plaintiff appealed. *Error; judgment to be rendered in favor of the plaintiff.*

The Connecticut Company operates an electric

street-railway upon the westerly side of a portion of Hope Street, in Stamford, for a distance of 5,500 feet thereon, with the necessary tracks, poles, wires and other permanent structures. This side location was established at the time the railway was built, presumably by agreement between the railway and the town.

On February 17th, 1919, the town of Stamford, acting by its selectmen, served upon the Connecticut Company an order requiring it to relocate its track from a side-line location upon Hope Street, by placing its track in the middle of the street. From this order the Company duly appealed to the Public Utilities Commission, and after hearing had the Commission confirmed the order of the selectmen and dismissed the appeal of the Company. From this order the Company appealed to the Superior Court, and the court dismissed the appeal and affirmed the order of the Commission.

Hope Street forms a portion of one of the main highways between Stamford and New Canaan. The surface of the highway is out of repair, and the town purposes repairing the same by widening and grading the highway and laying a permanent pavement thereon. For the purpose of carrying out this improvement the order of the selectmen was made.

Aside from the proposed permanent pavement of Hope Street, the shifting of the tracks to a middle location, this conforming to the existing middle location throughout the remainder of the entire line upon Hope Street, will be distinctly proper and highly conducive to the safety of all concerned, whether as passengers upon the street cars or as users of the highway.

The cost of relocating the track as required by the order will be $28,113.

The town of Stamford intends immediately to construct this pavement, and will seek to require the Com-

pany in accordance with General Statutes, § 3831, to pave the portion of its tracks which may be relocated. The cost of this pavement between the tracks and two feet each side will be $76,000.

The Connecticut Company operated its system for the year ending October 31st, 1919, at a loss of $10,939.61. Since the promulgation of this order the traffic rates of the Company have been increased and will produce an estimated increase of operative revenue of at least $1,500,000. It is under obligation to expend $1,500,000 for paving, which municipal authorities may momentarily enforce.

It owes the State more than $1,190,000 in unpaid taxes.

The physical valuation of this line from Glenbrook Corners to Springdale is $45,000.

There was a deficit on this line for this fiscal year of $32.43, allowing a return of five per cent on the investment value of the line of $45,000.

*Seth W. Baldwin,* for the appellant (plaintiff).

*Daniel F. B. Hickey,* with whom, on the brief, was *Nichols C. Downs,* for the appellee (defendant).

WHEELER, J. The maintenance and regulation of highways is within the police power of the State. The State may, by itself or its agent, decide what public improvement the public safety, health or welfare demands. The power to legislate for the safety, health or welfare of its people, is inherent in the State in virtue of its sovereignty. All property is held subject to this power. *Meriden* v. *West Meriden Cemetery Asso.*, 83 Conn. 204, 207, 76 Atl. 515. And all property, too, is held upon the implied promise of its owner or user that it shall not be used against the public welfare.

The Connecticut Company accepted its charter and operated this railway line subject to the power of the State or its agent, the town, to so regulate its use that it might not do injury to the public welfare. When the conditions and locality change and the public welfare requires it, the street-railway may be compelled to change its grade, or location, or the manner of its use of the highway. *Groesbeck* v. *Duluth, S. S. & A. Ry. Co.*, 250 U. S. 607, 613, 40 Sup. Ct. 38; *People ex rel. City of Geneva* v. *Geneva, W. S. F. & C. L. T. Co.*, 112 N. Y. App. Div. 581, 98 N. Y. Supp. 719; 1 Elliott on Roads & Streets (3d Ed.) § 85.

The protection of the public safety, health or morals, by the exercise of the police power, is not within the inhibitions of the Constitution. And since all property is held subject to such regulation, there is no obligation upon the State to indemnify the owner of property from the damage done him by the legitimate exercise of the police power. Property so damaged is not taken: its use is regulated in order to promote the public welfare. "While the city was bound to make compensation for that which was actually taken, it cannot be required to compensate the defendant for obeying lawful regulations enacted for the safety of the lives and property of the people." *Chicago, B. & Q. R. Co.* v. *Chicago*, 166 U. S. 226, 256, 17 Sup. Ct. 581.

The police power, like every other power of government, is within constitutional limitations. Laws enacted presumptively for the public welfare, but in fact not, cannot be sustained as an authorized exercise of the police power. *Toledo, W. & W. Ry. Co.* v. *Jacksonville*, 67 Ill. 37. And an Act regulatory of this power which is oppressive, or unreasonable, is not a legitimate exercise of this power. Every exercise of the police power must be a reasonable one, reasonable under the circumstances present; and the determination of this

is a judicial question. So that in the end the courts determine whether the regulation is a legitimate exercise of the police power. "The regulations must be reasonable and the burdens must be reasonably cast. The action must not be arbitrary, oppressive, partial, or unequal." *Fair Haven & W. R. Co.* v. *New Haven*, 75 Conn. 442, 451, 53 Atl. 960; *Turner* v. *Connecticut Co.*, 91 Conn. 692, 698, 101 Atl. 88. The railroad track laid in a public street, though by express public grant, is subject to such regulations as are reasonably necessary to secure the public safety; for this power " ' is inalienable even by express grant' and its legitimate exertion contravenes neither the contract-clause of the Constitution, nor the due-process clause of the Fourteenth Amendment. . . . Of course, all regulations of this class are subject to judicial scrutiny, and where they are found to be plainly unreasonable and arbitrary must be pronounced invalid as transcending that power and falling within the condemnation of one or both, as the case may be, of these constitutional restrictions." *Denver & R. G. R. Co.* v. *Denver*, 250 U. S. 241, 244, 39 Sup. Ct. 450.

The authority of the Public Utilities Commission upon appeal, over the subject of the relocation of the track of the plaintiff in Hope Avenue, was complete and exclusive. The determination of this was an administrative question so long as the Commission acted within its power. Its order of relocation must be a reasonable one; and the sole question upon this appeal is whether the order of relocation was a reasonable one under the circumstances present, or otherwise. We must reach our solution without regard to the expediency or wisdom of the order, and without the substitution of our judgment as to what is reasonable for that of the Commission. *New York & Queens Gas Co.* v. *McCall*, 245 U. S. 345, 351, 38 Sup. Ct, 122,

The trial court finds that the shifting of the street-railway track, over this section of Hope Street, to the existing middle location of the rest of the street, "would be distinctly proper and expedient, and highly conducive to the safety of all concerned, whether as passengers upon the street cars or users of the highway." Provided the order of relocation was made in the interest of public safety and was reasonable in the circumstances, the order was a valid order, even though no provision was made for indemnifying the railway company for the cost of relocation. The conclusion of the trial court depends upon the subordinate facts; upon whether they show that it was conducive to the public safety, and so much so as to justify the order in the circumstances. The finding fails to state the facts upon which this conclusion is based. No motion to correct the finding in this particular is before us. Therefore we cannot have recourse to the transcript of the evidence made a part of the record. All that we know from the finding is that Hope Street is a main thoroughfare between Stamford and New Canaan, and we understand from the profile, made a part of the finding, that the section through which the relocated line passes is sparsely settled and that there are three streets opening into Hope Avenue upon the side of the street upon which the track is now laid. There is no finding that the present location is dangerous to the public on the highway, or to passengers in the cars. These facts will hardly support the conclusion that a relocation will be highly conducive to the public safety.

It appears that the cost of relocating the track will be $28,113, while the physical valuation of this part of the line is only $45,000. After providing a return of five per cent on this valuation, the deficit of this line would have been $32.43. We recognize that the plaintiff may not treat this portion of its railway as an

independent unit.  It may not operate such portions only as are presently profitable.  Serving the public under a public franchise it must fulfil its corporate duties.  Its entire system for the year ending October 31st, 1919, was operated at a loss of over $10,000.  It has accumulated a debt to the State for taxes of nearly $1,200,000.  It is under obligation to pay $1,500,000 for paving improvement upon the order of the municipal authorities.  It is true that it is estimated that a new scale of rates will increase its operating revenue by $1,500,000.  But the extent of its mileage, its betterment needs, its capital requirements, its probable increased operating expenses in the future, are not found.  And there is upon the finding no way to ascertain what part, if any, of this sum obtained from increased rates, if realized, will be available to meet the relocation cost upon this line.  If all side locations on the system were to be changed to middle locations, the charge upon the plaintiff must obviously be large.

Under these circumstances we think it ought to clearly appear that the public need is urgent, before so serious a burden is imposed upon the public-service corporation.  In this case the order is in its nature confiscatory, and must be held unreasonable until it clearly appears that the public welfare urgently requires this relocation of plaintiff's track.  Looking at the public interest to serve, so far as this record develops, and at the excessive expense entailed by the order, and at the serious financial condition which confronts the plaintiff, we can reach no conclusion other than that the order of relocation is an unreasonable one under the circumstances of this case.  The conclusion of the trial court is not sustained by the facts found.  The reasonableness of an order such as this, is to be determined by the facts from which the conclusion is drawn, rather than from the conclusion itself.

We have not taken into consideration the fact that the relocation of the track was a part of a plan for improving the highway by laying a permanent pavement thereon, the share to be paid for by the plaintiff by force of the statute being a large sum. We do not regard this additional expense as any part of the order appealed from and as involved in this appeal.

There is error, the judgment is set aside and the Superior Court is directed to render its judgment sustaining the appeal from the Public Utilities Commission and in accordance with the foregoing opinion.

. In this opinion the other judges concurred.