STATE OF CONNECTICUT *vs.* WILLIAM HELLER.

MALTBIE, C. J., HINMAN, AVERY, BROWN and JENNINGS, Js.

Argued October 14th—decided December 21st, 1937.

*William Hanna,* for the appellant (defendant).

*Richard S. Swain,* Prosecuting Attorney, for the appellee (the State).

BROWN, J. The information charged that the defendant on or about July 11th, 1936, at Easton, bathed in a stream tributary to a reservoir from which the inhabitants of Bridgeport are supplied with water, in violation of § 2542 of the General Statutes. That statute so far as relevant provides: "Any person who shall bathe in any reservoir from which the inhabit-

ants of any town, city or borough are supplied with water, or in any lake, pond or stream tributary to such reservoir," shall be subject to fine, imprisonment, or both. The defendant's demurrer to the information was overruled. He thereupon elected to be tried by the court and it found him guilty.

These facts are undisputed: On July 11th, 1936, the defendant owned in fee simple a tract of land in Easton comprising about thirty-eight acres, on which was a dwelling-house occupied by him and his family. Ball Wall Brook flows across this land forming a small pond thereon, and runs on into the Aspetuck Reservoir about forty-two hundred feet away, from which by connecting pipe water flows into the Hemlock Reservoir. These reservoirs are part of the Bridgeport Hydraulic Company's system, from which Bridgeport and other municipalities are supplied with water. Ball Wall Brook is and ever since before the defendant's purchase of his property has been a stream tributary to both of these reservoirs. The distance from the place where it enters the Aspetuck Reservoir to the pipes leading from the reservoir to the municipality is over three and one-half miles. The combined area of the reservoirs when full is about five hundred acres. On July 11th, 1936, the accused bathed in Ball Wall Brook at a place within the boundaries of the thirty-eight acre tract owned by him, and was arrested and charged with a violation of § 2542 of the General Statutes.

The fundamental question determinative of the appeal is whether § 2542 as applied to the defendant in forbidding his bathing pursuant to his property right in a brook flowing through his own land, is a valid exercise of the State's police power, or is unconstitutional as depriving him of property rights without compensation. It is unquestioned that the defendant

as riparian owner had a right which included ordinary and reasonable bathing privileges in this brook by himself, his family, and inmates and guests of his household. *Harvey Realty Co.* v. *Wallingford,* 111 Conn. 352, 359, 150 Atl. 60. It is further undisputed that § 2542 can only be sustained as an exercise of the State's police power. Furthermore, it is not disputed that the object of the statute in question is to protect the health of citizens using water distributed through these reservoirs, and that thus its purpose affords a proper basis for the exercise of the police power inherent in the Legislature. *State* v. *Racskowski,* 86 Conn. 677, 680, 86 Atl. 606; 1 Farnham, Waters & Water Rights, p. 618, § 137a. The issue for determination, therefore, is reduced to the sole question of whether or not this exercise of the police power for the purpose indicated, is so unreasonable as to violate the provisions of Section 11 of Article First of the Constitution of the State of Connecticut or Section 1 of Article XIV of the Amendments to the Constitution of the United States.

The foundation of the police power of a State is the overruling necessity of the public welfare. Thus it has been referred to as that inherent and plenary power which enables the State "to make and enforce rules and regulations concerning and to prevent and prohibit all things hurtful to the comfort and welfare of society. It has been aptly termed 'The Law of Overruling Necessity,' and compared with the right of self-protection of the individual, it is involved in the very right and idea of government itself, and based on the two maxims that, 'The Public Welfare is the Highest Law,' and that 'One must so use his own right as not to injure that of another.' " 1 Bruce, State and Federal Control of Personal and Property Rights, 8. Accordingly all property of every person is owned sub-

ject to this power resting in the State. It is an incident of title. *Application of St. Bernard Cemetery Asso.,* 58 Conn. 91, 96, 19 Atl. 514. "The power to legislate for the safety, health or welfare of its people, is inherent in the State by virtue of its sovereignty. All property is held subject to this power. *Meriden* v. *West Meriden Cemetery Asso.,* 83 Conn. 204, 207, 76 Atl. 515. And all property, too, is held upon the implied promise of its owner or user that it shall not be used against the public welfare." *Connecticut Co.* v. *Stamford,* 95 Conn. 26, 29, 110 Atl. 554.

It is pursuant to these principles that the State may regulate one's use of his property. "In short, it [the police power] may regulate any business or the use of any property in the interest of the public health, safety or welfare, provided this be done reasonably. To that extent the public interest is supreme and the private interest must yield. Eminent domain takes property because it is useful to the public. The police power regulates the use of property or impairs the rights in property, because the free exercise of these rights is detrimental to public interest. Freund, Police Power, § 511." *Windsor* v. *Whitney,* 95 Conn. 357, 367, 111 Atl. 354; *State* v. *Kievman,* 116 Conn. 458, 463, 165 Atl. 601. "The use of property may be regulated as the public welfare demands. . . . Beyond this, private property cannot be interfered with under the police power, but resort must be had to the power of eminent domain and compensation made." 1 Lewis, Eminent Domain (3d Ed.) p. 492, § 249. "The protection of the public safety, health or morals, by the exercise of the police power, is not within the inhibitions of the Constitution. And since all property is held subject to such regulation, there is no obligation upon the State to indemnify the owner of property for the damage done him by the legitimate exer-

cise of the police power. Property so damaged is not taken: its use is regulated in order to promote the public welfare." *Connecticut Co.* v. *Stamford,* supra, 30; *State* v. *Wheeler,* 44 N. J. L. 88, 93.

But there are definite limits upon the application of the foregoing principles. "The power of regulation by government is not unlimited; it cannot, as we have stated, be imposed unless it bears rational relation to the subjects which fall fairly within the police power and unless the means used are not within constitutional inhibitions. The means used will fall within these inhibitions whenever they are destructive, confiscatory, or so unreasonable as to be arbitrary. *Euclid* v. *Ambler Realty Co.,* 272 U. S. 365, 47 Sup. Ct. 114." *State* v. *Hillman,* 110 Conn. 92, 105, 147 Atl. 294. "A large discretion is necessarily vested in the Legislature to determine not only what the interests of public health, security and morals require, but what measures are necessary for the protection of such interests. *Young* v. *Lemieux,* 79 Conn. 434, 440, 65 Atl. 436, 600." *Cotter* v. *Stoeckel,* 97 Conn. 239, 244, 116 Atl. 248. Furthermore, " 'incidental damage to property resulting from governmental activities, or laws passed in the promotion of the public welfare, is not considered a taking of the property for which compensation must be made.' " *State* v. *Hillman,* supra, 104.

The foregoing principles are established by abundant authority. The difficulty arises in their application, to determine where the proper exercise of the police power ends and that of the other governmental power of eminent domain begins, that is, how far the State can properly go to deprive an owner of valuable rights under the former without compensation, as distinguished from necessary resort to the latter with compensation. The right of the State in the exercise of its police power to limit the use of property even

when prejudicial to the pecuniary interests of the owner, has been made increasingly clear by our more recent decisions. *Windsor* v. *Whitney,* supra; *State* v. *Hillman,* supra; *Young* v. *West Hartford,* 111 Conn. 27, 149 Atl. 205; *Rice* v. *Zoning Board of Appeals of Milford,* 122 Conn. 435, 190 Atl. 257. Whether a statute enacted pursuant to the police power is a means reasonable in quality and extent, and in time, place and circumstance, presents a question to be determined by the court. *Windsor* v. *Whitney,* supra, 369. It is the court's duty in such case, in the exercise of great care and caution, to make every presumption and intendment in favor of the validity of the statute, and to sustain it unless its invalidity is beyond a reasonable doubt. *Beach* v. *Bradstreet,* 85 Conn. 344, 350, 82 Atl. 1032; *State* v. *Lay,* 86 Conn. 141, 145, 84 Atl. 522; *State* v. *Muolo,* 119 Conn. 323, 325, 176 Atl. 401. It is in the light of the principles above stated, that we must determine whether the provisions of § 2542 are so unreasonable as to constitute an unconstitutional invasion of the defendant's rights.

The defendant claims the statute is invalid in that its unlimited scope constitutes an unreasonable exercise of the police power, it being contended that it goes far beyond what is necessary to accomplish the legislative purpose and so does not bear a reasonable relation thereto. Thus it is contended that since by its terms the statute prohibits bathing in "any tributary" of a reservoir, it could apply to one bathing in a brook which finally flows into a reservoir a hundred miles away but that any resulting pollution would be cleared before the polluted water reached such reservoir, and that therefore it prohibits something unnecessary for the public's protection. The physical impossibility of such a case, due to the boundaries and topography of the State, affords one

answer to this argument; the lack of a finding that the pollution would be cleared under such circumstances affords another. While the established scientific fact that water can serve as a carrier of disease germs to one drinking it, is one within judicial notice (*State* v. *Morse*, 84 Vt. 387, 80 Atl. 189, 194), what the conditions essential to the destruction of such germs in water of a flowing stream may be, is not. But aside from this, the tendency of such pollution to produce public injury, even though no actual injury occurs, affords ground sufficient to sustain the Legislature's act. *State* v. *Wheeler*, supra, 92; *Dunham* v. *New Britain*, 55 Conn. 378, 384, 11 Atl. 354. Upon the record before us we cannot hold that bathing in a tributary of a reservoir might not have such a tendency to endanger the health of users of the water that the Legislature might not reasonably prohibit it. It is our conclusion that the statute by its terms is not of such broad scope that it fails to bear a rational relation to the protection of the public health, thus constituting an unreasonable exercise of the police power.

The defendant further claims the statute is invalid because it deprives him of a property right without compensation. One contention is that the Bridgeport Hydraulic Company by the operation of this penal statute is obtaining rights in his property without paying for them. The State chartered the company to engage in business as a public utility to supply water for profit to the municipalities served. If the sole result from the enforcement of § 2542 was to benefit this company, there would be force to the defendant's contention, for the valid exercise of the police power must find justification in the general public welfare rather than in the protection or enhancement of private interests. *State* v. *Kievman*, supra, 469. The significant fact here is, however, that

by the State's grant of a charter to the company to supply water for the people in this locality, the State's duty to protect the health and welfare of these people was neither abandoned nor discharged. Therefore the fact that the State's enactment of such a statute in carrying out its duty, incidentally benefits the company by helping to safeguard the purity of its water supply, which it as a public agent under its charter dispenses to meet the needs of the people of the locality, is of no consequence. The duty of the State is in extent state-wide, and § 2542 is of application coincident therewith.

The further and basic contention is, that since this statute entirely deprives the defendant of his valuable property right of bathing in this stream, it goes beyond regulation within the police power, and constitutes a taking, warranted only under eminent domain proceedings with proper compensation. The principles above recited make clear that this conclusion does not necessarily follow. Of the legion of decisions illustrative of this, we refer to but two cases very closely analogous to the present, *Commonwealth* v. *Tewksbury*, 52 Mass. 55, 57, and *People* v. *Bridges*, 142 Ill. 30, 31 N. E. 115, 16 L. R. A. 684, 687. In the former, a statute for the protection of Boston Harbor, forbidding any person to take stones, gravel, or sand from the shore, was sustained as against one taking where he owned the fee, as was the statute in the latter forbidding any person to fish with a seine in a stream or lake, even as against an owner fishing upon his own land. Thus a law which in fact in certain respects deprives the owner of a use of his property involving its physical consumption, if to protect a common right of all citizens, is valid within the police power. *State* v. *Wheeler*, supra. A fortiori regulation depriving the defendant merely of his property

right to bathe as here, may also be valid as within it. What we said in *State* v. *Hillman,* supra, 105, is a sufficient answer to this contention of the defendant: "Regulations may result to some extent, practically in the taking of property, or the restricting of its uses, and yet not be deemed confiscatory or unreasonable."

There is no distinction in principle between the legal restriction in the present case which without compensation deprives the owner of his right to bathe in the stream crossing his property, and that in *State* v. *Hillman,* supra, prohibiting the use of property for business purposes; or that in *Windsor* v. *Whitney,* supra, depriving him of the right to build on the entire area of his lot; or that in *Ingham* v. *Brooks,* 95 Conn. 317, 328, 111 Atl. 209, denying an owner the right to move a building from one place to another, which was held within the police power although the ordinance in question was void by reason of the arbitrary and unfettered discretion in the town officials thereunder; or that in *Application of St. Bernard Cemetery Asso.,* supra, denying an owner the right to use its property for cemetery purposes unless the court determined such use would not be detrimental to public health; or those in a number of cases that have come before us involving various zoning ordinances. The restriction imposed by § 2542 was not a taking contravening any constitutional provision, but rather a regulation within the State's police power.

Two decisions, where the precise question here presented on substantially the same factual situation was determined, have reached diametrically opposite conclusions. In the earlier case of *People* v. *Hulbert,* 131 Mich. 156, 173, 91 N. W. 211, decided in 1902, where the defendant, a riparian owner on a pond or lake from which a city took its water supply, was convicted of bathing therein, under a statute which made

it a criminal offense to pollute such waters, the court held in a very brief statement citing no authorities that as such owner the defendant had a right to a reasonable use of the waters of the lake including the right to bathe and swim therein, and that he could not be deprived of this right by the police power of the State. The later case of *State* v. *Morse,* supra, decided in 1911, on a similar state of facts, criticised the earlier case and arrived at the opposite conclusion. In the case of *Battle Creek* v. *Goguac Resort Asso., Ltd.,* 181 Mich. 241, 148 N. W. 441, 443, decided in 1914, in an opinion concurred in by three of the judges of the equally divided court, some question is intimated as to the soundness of the court's decision in the *Hulbert* case.

In the *Morse* case the court pointed out that since the defendant's right to bathe conflicted with the public's rights concerning its health, safety, and welfare, the former must yield and the latter prevail, and that the enforcement and protection of these paramount rights is the proper function of the police power. It went on to conclude that within the principles definitive of the police power and those applicable to the interpretation of enactments pursuant thereto, which we have already mentioned, the action of the state board of health in question was a valid exercise of the police power. We reach a similar conclusion in the case before us. What the court says in the *Morse* case (p. 393) well states the effect of the statute here: "Such use in such circumstances may be prohibited in a valid exercise of the police power. The owner's rights are not then 'taken' in a constitutional sense; or, if this statement savors too much of refinement of reasoning, as some suggest, the 'taking' is not such as the Constitution prohibits. The beneficial use of the property is curtailed in some measure but all the other

incidents of ownership are left unimpaired. The fact that this is a property right does not determine the question." The regulation imposed by § 2542 is neither destructive, confiscatory nor arbitrary, but is on the contrary upon all the facts in the case, reasonable in time, place, and circumstance, and therefore a reasonable exercise of the police power. Cf.: *State v. Griffin,* 69 N. H. 1, 22, 39 Atl. 260; *Miles City v. State Board of Health,* 39 Mont. 405, 411, 102 Pac. 696; *Durham v. Cotton Mills,* 141 N. C. 615, 634, 54 S. E. 453.

The defendant makes one further claim, that other statutes, including §§ 2539, 2540 and 2541, show so clearly that the legislative policy of the State is to provide for compensation in all cases where a person is to be deprived of any property rights in protecting public water supplies, that § 2542 must in any event, for that reason, be interpreted as not applicable to one like the defendant, bathing in a reservoir tributary within the limits of his own land. Section 2539 provides for injunctive relief against the pollution of a reservoir, and authorizes the abatement of nuisances upon a watershed causing such pollution. It further gives the owner a right to compensation "for all unnecessary or unreasonable damage done" to his property by those abating a nuisance thereunder. Section 2540 provides for the assessment of damages in favor of one damaged or deprived of "any substantial right" by any order of the court under § 2539. Section 2541 provides for the taking of property for the establishment or protection of a public water supply, and the awarding of damages therefor "in any case in which the law shall require compensation." Under these statutes by the court's decree, not only may an owner's rights to use his property be curtailed, but his very title to either a part or all of it may be entirely

divested. The Legislature, therefore, in these sections, with good reason, made provision for compensation to meet such a contingency, but by its enactment of penal § 2542, under which at most one's right to bathe in a stream on his land could be cut off, did not. This, as well as the language above quoted from §§ 2539, 2540 and 2541, refutes the defendant's claim that they evidence a legislative policy to provide compensation in all cases where private property rights are restricted for the benefit of a public water supply. These indicate rather that the Legislature contemplated there would be cases where the exercise of the police power would interfere with one's use of his property without entitling him to compensation.

There is no error.

In this opinion the other judges concurred.